[No. S020997. July 30, 1992.]

PHILIP I. MONCHARSH, Plaintiff and Appellant, v.
HEILY & BLASE et al., Defendants and Respondents.

4

**COUNSEL**

Philip I. Moncharsh, in pro. per., Townsend & Townsend, Paul W. Vapnek and Mark L. Pettinari for Plaintiff and Appellant.

DeWitt F. Blase, in pro. per., Heily & Blase and John R. Johnson for Defendants and Respondents.

OPINION

LUCAS, C. J.—We granted review in this case to decide, inter alia, the extent to which a trial court may review an arbitrator's decision for errors of law. For the reasons discussed below, we conclude an arbitrator's decision is not generally reviewable for errors of fact or law, whether or not such error appears on the face of the award and causes substantial injustice to the parties. There are, however, limited exceptions to this general rule, which we also discuss below.

FACTS

On June 16, 1986, appellant Philip Moncharsh, an attorney, was hired by respondent Heily & Blase, a law firm. As a condition of employment as an associate attorney in the firm, Moncharsh signed an agreement containing a number of provisions governing various aspects of his employment. One provision (hereafter referred to as paragraph X-C) stated: "X C. EMPLOYEE-ATTORNEY agrees not to do anything to cause, encourage, induce, entice, recommend, suggest, mention or otherwise cause or contribute to any of FIRM's clients terminating the attorney-client relationship with FIRM, and/or substituting FIRM and retaining or associating EMPLOYEE-ATTORNEY or any other attorney or firm as their legal counsel. In the event that any FIRM client should terminate the attorney-client relationship with FIRM and substitute EMPLOYEE-ATTORNEY or another attorney or law firm who[m] EMPLOYEE-ATTORNEY suggested, recommended or directed as client's successor attorney, then, in addition to any costs which client owes FIRM up to the time of such substitution, as to all fees which EMPLOYEE-ATTORNEY may actually receive from that client or that client's succccessor attorney on any such cases, BLASE will receive eighty percent (80%) of said fee and EMPLOYEE-ATTORNEY will receive twenty percent (20%) of said fee."

Moncharsh terminated his employment with Heily & Blase on February 29, 1988. DeWitt Blase, the senior partner at Heily & Blase, contacted 25 or 30 of Moncharsh's clients, noted that they had signed retainer agreements with his firm, and explained that he would now be handling their cases. Five clients, whose representation by Moncharsh predated his association with Heily & Blase, chose to have Moncharsh continue to represent them. A sixth client, Ringhof, retained Moncharsh less than two weeks before he left the firm. Moncharsh continued to represent all six clients after he left the firm.

When Blase learned Moncharsh had received fees at the conclusion of these six cases, he sought a quantum meruit share of the fees as well as a percentage of the fees pursuant to paragraph X-C of the employment agreement. Blase rejected Moncharsh's offer to settle the matter for only a

quantum meruit share of the fees. The parties then invoked the arbitration clause of the employment agreement[1] and submitted the matter to an arbitrator.

The arbitrator heard two days of testimony[2] and the matter was submitted on the briefs and exhibits. In his brief, Moncharsh argued (1) Heily & Blase was entitled to only a quantum meruit share of the fees, (2) Moncharsh and Blase had an oral agreement to treat differently the cases Moncharsh brought with him to Heily & Blase, (3) the employment agreement had terminated and was therefore inapplicable, (4) the agreement was one of adhesion and therefore unenforceable, and (5) paragraph X-C is unenforceable because it violates public policy, the Rules of Professional Conduct of the State Bar, and because it is inconsistent with *Fracasse* v. *Brent* (1972) 6 Cal.3d 784 [100 Cal.Rptr. 385, 494 P.2d 9], and *Champion* v. *Superior Court* (1988) 201 Cal.App.3d 777 [247 Cal.Rptr. 624].

In its brief, Heily & Blase contended paragraph X-C (1) is clear and unequivocal, (2) is not unconscionable, and (3) represented a reasonable attempt to avoid litigation and was thus akin to a liquidated damages provision. In addition, "To the extent it becomes important to the Arbitrator's decision," Heily & Blase alleged that Moncharsh solicited the six clients to remain with him, and further suggested that Moncharsh retained those six because it was probable that financial settlements would soon be forthcoming in all six matters. Heily & Blase contrasted these six matters with the other cases Moncharsh left with the firm, all of which allegedly required a significant amount of additional legal work.

The arbitrator ruled in Heily & Blase's favor, concluding that any oral side agreement between Moncharsh and Blase was never documented and that Moncharsh was thus bound by the written employee agreement. Further, the arbitrator ruled that, "except for client Ringhof, [paragraph X-C] is not unconscionable, and it does not violate the rules of professional conduct. At the time MR. MONCHARSH agreed to the employment contract, he was a mature, experienced attorney, with employable skills. Had he not been willing to agree to the eighty/twenty (80/20) split on termination, he could simply have refused to sign the document, negotiated something different, or if negotiations were unsuccessful, his choice was to leave his employment.

---

[1]The arbitration clause provided: "Any dispute arising out of this Agreement shall be subject to arbitration under the rules of the American Arbitration Association. No arbitrator shall have any power to alter, amend, modify or change any of the terms of this agreement. The decision of the arbitrator shall be final and binding on FIRM and EMPLOYEE-ATTORNEY." None of the rules of the American Arbitration Association have any bearing on the issues raised in this case.

[2]The hearing before the arbitrator was not reported.

. . . [¶] . . . The Arbitrator excludes the Ringhof client from the eighty/ twenty (80/20) split because that client was obtained at the twilight of MR. MONCHARSH's relationship with HEILY & BLASE, and an eighty/twenty (80/20) split with respect to that client would be unconscionable."

Moncharsh petitioned the superior court to vacate and modify the arbitration award. (Code Civ. Proc., § 1286.2; all subsequent statutory references are to this code unless otherwise stated.) Heily & Blase responded by petitioning the court to confirm the award. (§ 1285.) The court ruled that, "The arbitrator's findings on questions of both law and fact are conclusive. A court cannot set aside an arbitrator's error of law no matter how egregious." The court allowed an exception to this rule, however, "where the error appears on the face of the award." Finding no such error, the trial court denied Moncharsh's petition to vacate and granted Heily & Blase's petition to confirm the arbitrator's award.

On appeal, the Court of Appeal also recognized the rule, announced in previous cases, generally prohibiting review of the merits of the arbitrator's award. It noted, however, that an exception exists when "an error of law appears on the face of the ruling and then only if the error would result in substantial injustice." Although Moncharsh claimed paragraph X-C violated law, public policy, and the State Bar Rules of Professional Conduct, the appellate court disagreed and affirmed the trial court judgment.

We granted review and directed the parties to address the limited issue of whether, and under what conditions, a trial court may review an arbitrator's decision.

## DISCUSSION

### 1.  *The General Rule of Arbitral Finality*

The parties in this case submitted their dispute to an arbitrator pursuant to their written agreement. This case thus involves private, or nonjudicial, arbitration. (See *Blanton* v. *Womancare, Inc.* (1985) 38 Cal.3d 396, 401-402 & fn. 5 [212 Cal.Rptr. 151, 696 P.2d 645, 48 A.L.R.4th 109] [discussing the differences between judicial and nonjudicial arbitration].) ■ In cases involving private arbitration, "[t]he scope of arbitration is . . . a matter of agreement between the parties" (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.* v. *100 Oak Street* (1983) 35 Cal.3d 312, 323 [197 Cal.Rptr. 581, 673 P.2d 251] [hereafter *Ericksen*]), and " '[t]he powers of an arbitrator are limited and circumscribed by the agreement or stipulation of submission.' " (*O'Malley* v. *Petroleum Maintenance Co.* (1957) 48 Cal.2d 107, 110 [308

P.2d 9] [hereafter *O'Malley*], quoting *Pac. Fire etc. Bureau* v. *Bookbinders' Union* (1952) 115 Cal.App.2d 111, 114 [251 P.2d 694].)

█ Title 9 of the Code of Civil Procedure, as enacted and periodically amended by the Legislature, represents a comprehensive statutory scheme regulating private arbitration in this state. (§ 1280 et seq.) Through this detailed statutory scheme, the Legislature has expressed a "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." (*Ericksen, supra,* 35 Cal.3d at p. 322; *Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 706-707 [131 Cal.Rptr. 882, 552 P.2d 1178]; *Victoria* v. *Superior Court* (1985) 40 Cal.3d 734, 750 [222 Cal.Rptr. 1, 710 P.2d 833] [dis. opn. of Lucas, J.]; *City of Oakland* v. *United Public Employees* (1986) 179 Cal.App.3d 356, 363 [224 Cal.Rptr. 523]; see also *Shearson/American Express Inc.* v. *McMahon* (1987) 482 U.S. 220, 226 [96 L.Ed.2d 185, 193, 107 S.Ct. 2332] [Federal Arbitration Act, 9 U.S.C. § 1 et seq., establishes federal policy in favor of arbitration].) Consequently, courts will " 'indulge every intendment to give effect to such proceedings.' " (*Doers* v. *Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 189 [151 Cal.Rptr. 837, 588 P.2d 1261], quoting *Pacific Inv. Co.* v. *Townsend* (1976) 58 Cal.App.3d 1, 9 [129 Cal.Rptr. 489].) Indeed, more than 70 years ago this court explained: "The policy of the law in recognizing arbitration agreements and in providing by statute for their enforcement is to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing." (*Utah Const. Co.* v. *Western Pac. Ry. Co.* (1916) 174 Cal. 156, 159 [162 P. 631] [hereafter *Utah Const.*].) "Typically, those who enter into arbitration agreements expect that their dispute will be resolved without necessity for any contact with the courts." (*Blanton* v. *Womancare, Inc., supra,* at p. 402, fn. 5.)

The arbitration clause included in the employment agreement in this case specifically states that the arbitrator's decision would be both binding and final. The parties to this action thus clearly intended the arbitrator's decision would be final. █ Even had there been no such expression of intent, however, it is the general rule that parties to a private arbitration impliedly agree that the arbitrator's decision will be both binding and final.[3] Indeed, "The very essence of the term 'arbitration' [in this context] connotes a binding award." (*Blanton* v. *Womancare, Inc., supra,* 38 Cal.3d at p. 402, citing Domke on Commercial Arbitration (rev. ed. 1984) p. 1 [hereafter

---

[3]We assume for this discussion of general principles that an enforceable arbitration agreement exists. We do not address here the situation where one party advances a legal theory that would vitiate the parties' voluntary agreement to submit to arbitration. (See § 1281.2 [court will not order arbitration if "[g]rounds exist for the revocation of the agreement"].)

Domke].) In the early years of this state, this court opined that, "When parties agree to leave their dispute to an arbitrator, they are presumed to know that his award will be final and conclusive . . . ." (*Montifiori* v. *Engels* (1853) 3 Cal. 431, 434.) One commentator explains, "Even in the absence of an explicit agreement, conclusiveness is expected; the essence of the arbitration process is that an arbitral award shall put the dispute to rest." (Comment, *Judicial Deference to Arbitral Determinations: Continuing Problems of Power and Finality* (1976) 23 UCLA L.Rev. 948-949 [hereafter *Judicial Deference*].) It has thus been observed that, "The parties [to an arbitration] can take a measure of comfort in knowing that the arbitrator's award will almost certainly mean an end to the dispute." (Oehmke, Commercial Arbitration (1987) § 6:10, p. 140 [hereafter Oehmke].)

This expectation of finality strongly informs the parties' choice of an arbitral forum over a judicial one. The arbitrator's decision should be the end, not the beginning, of the dispute. (See Feldman, *Arbitration Modernized—The New California Arbitration Act* (1961) 34 So.Cal.L.Rev. 413, 414, fn. 11.) Expanding the availability of judicial review of such decisions "would tend to deprive the parties to the arbitration agreement of the very advantages the process is intended to produce." (*Victoria* v. *Superior Court, supra,* 40 Cal.3d at p. 751 [dis. opn. of Lucas, J.]; see generally, *Judicial Deference, supra,* 23 UCLA L.Rev. at p. 949.)

Ensuring arbitral finality thus requires that judicial intervention in the arbitration process be minimized. (*City of Oakland* v. *United Public Employees, supra,* 179 Cal.App.3d at p. 363; *Lindholm* v. *Galvin* (1979) 95 Cal.App.3d 443, 450-451 [157 Cal.Rptr. 167].) Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration. Thus, an arbitration decision is final and conclusive *because the parties have agreed that it be so.* By ensuring that an arbitrator's decision is final and binding, courts simply assure that the parties receive the benefit of their bargain.[4]

■ Moreover, "[a]rbitrators, unless specifically required to act in conformity with rules of law, may base their decision upon broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim

---

[4]Professor Feldman suggests that, "Psychologically and economically, the parties having selected their own decider, they would, on the whole, be satisfied with his award, as the best which could be had under the circumstances." (Feldman, *Arbitration Law in California: Private Tribunals for Private Government* (1957) 30 So.Cal.L.Rev. 375, 384 [discussing the arbitration scheme under the 1927 law].)

that a party might successfully have asserted in a judicial action." (*Sapp* v. *Barenfeld* (1949) 34 Cal.2d 515, 523 [212 P.2d 233]; see also *Morris* v. *Zuckerman* (1968) 69 Cal.2d 686, 691 [72 Cal.Rptr. 880, 446 P.2d 1000]; *Grunwald-Marx, Inc.* v. *L.A. Joint Board* (1959) 52 Cal.2d 568, 589 [343 P.2d 23].) As early as 1852, this court recognized that, "The arbitrators are not bound to award on principles of dry law, but may decide on principles of equity and good conscience, and make their award *ex aequo et bono* [according to what is just and good]." (*Muldrow* v. *Norris* (1852) 2 Cal. 74, 77.) "As a consequence, arbitration awards are generally immune from judicial review. 'Parties who stipulate in an agreement that controversies that may arise out of it shall be settled by arbitration, may expect not only to reap the advantages that flow from the use of that nontechnical, summary procedure, but also to find themselves bound by an award reached by paths neither marked nor traceable and not subject to judicial review.' (*Case* v. *Alperson* (1960) 181 Cal.App.2d 757, 759. . . .)" (*Nogueiro* v. *Kaiser Foundation Hospitals* (1988) 203 Cal.App.3d 1192, 1195 [250 Cal.Rptr. 478].)

■ Thus, both because it vindicates the intentions of the parties that the award be final, and because an arbitrator is not ordinarily constrained to decide according to the rule of law, it is the general rule that, "The merits of the controversy between the parties are not subject to judicial review." (*O'Malley, supra,* 48 Cal.2d at p. 111; *Griffith Co.* v. *San Diego Col. for Women* (1955) 45 Cal.2d 501, 510 [289 P.2d 476, 47 A.L.R.2d 1349]; *Pacific Vegetable Oil Corp.* v. *C.S.T. Ltd.* (1946) 29 Cal.2d 228, 233 [174 P.2d 441] [hereafter *Pacific Vegetable*].) More specifically, courts will not review the validity of the arbitrator's reasoning. (*Grunwald-Marx, Inc.* v. *L.A. Joint Board, supra,* 52 Cal.2d at p. 589; *Nogueiro* v. *Kaiser Foundation Hospitals, supra,* 203 Cal.App.3d at p. 1195; *Ray Wilson Co.* v. *Anaheim Memorial Hospital Assn.* (1985) 166 Cal.App.3d 1081, 1091 [213 Cal.Rptr. 62]; *American & Nat. etc. Baseball Clubs* v. *Major League Baseball Players Assn.* (1976) 59 Cal.App.3d 493, 498 [130 Cal.Rptr. 626] [hereafter *Baseball Players*].) Further, a court may not review the sufficiency of the evidence supporting an arbitrator's award. (*Morris* v. *Zuckerman, supra,* 69 Cal.2d at 691; *Pacific Vegetable, supra,* 29 Cal.2d at p. 238; *Nogueiro* v. *Kaiser Foundation Hospitals, supra,* 203 Cal.App.3d at p. 1195; see generally, 6 Cal.Jur.3d (rev.) Arbitration and Award, § 76, pp. 133-134.)

Thus, it is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law. In reaffirming this general rule, we recognize there is a risk that the arbitrator will make a mistake. That risk, however, is acceptable for two reasons. First, by voluntarily submitting to arbitration, the parties have agreed to bear that risk in return for a quick, inexpensive, and conclusive resolution to their dispute.

(See *That Way Production Co.* v. *Directors Guild of America, Inc.* (1979) 96 Cal.App.3d 960, 965 [158 Cal.Rptr. 475] [hereafter *That Way*].) As one commentator explains, "the parties to an arbitral agreement knowingly take the risks of error of fact or law committed by the arbitrators and that this is a worthy 'trade-off' in order to obtain speedy decisions by experts in the field whose practical experience and worldly reasoning will be accepted as correct by other experts." (Sweeney, *Judicial Review of Arbitral Proceedings* (1981-1982) 5 Fordham Int'l L.J. 253, 254.) "In other words, it is within the power of the arbitrator to make a mistake either legally or factually. When parties opt for the forum of arbitration they agree to be bound by the decision of that forum knowing that arbitrators, like judges, are fallible." (*That Way, supra,* at p. 965.)

*Griffith Co.* v. *San Diego Col. for Women, supra,* 45 Cal.2d 501, is illustrative. In that case, the plaintiff contracted to build certain buildings for the defendant college. When work was delayed, a dispute arose and the matter was submitted to arbitration. When a split arbitration panel ruled in the defendant's favor, the plaintiff moved the superior court to vacate the award, claiming, inter alia, that "the decision is arbitrary, harsh and inequitable; that it is contrary to law; and that it is not coextensive with the issues submitted." (*Id.* at p. 510.) This court rejected these contentions, stating, " 'Even if the arbitrator decided [the] point incorrectly, he did decide it. The issue was admitted properly before him. Right or wrong the parties have contracted that such a decision should be conclusive. At most, it is an error of law, not reviewable by the courts.' " (*Id.* at pp. 515-516, quoting *Crofoot* v. *Blair Holdings Corp.* (1953) 119 Cal.App.2d 156, 189, [260 P.2d 156] [*Crofoot* disapproved on other grounds, *Posner* v. *Grunwald-Marx, Inc.* (1961) 56 Cal.2d 169, 183 (14 Cal.Rptr. 297, 363 P.2d 313)].)

A second reason why we tolerate the risk of an erroneous decision is because the Legislature has reduced the risk to the parties of such a decision by providing for judicial review in circumstances involving serious problems with the award itself, or with the fairness of the arbitration process. As stated *ante,* private arbitration proceedings are governed by title 9 of the Code of Civil Procedure, sections 1280-1294.2. Section 1286.2 sets forth the grounds for vacation of an arbitrator's award. It states in pertinent part: "[T]he court shall vacate the award if the court determines that: [¶] (a) The award was procured by corruption, fraud or other undue means; [¶] (b) There was corruption in any of the arbitrators; [¶] (c) The rights of such party were substantially prejudiced by misconduct of a neutral arbitrator; [¶] (d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; or [¶] (e) The rights of such party were substantially prejudiced by the refusal of the

arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title."

In addition, section 1286.6 provides grounds for correction of an arbitration award. That section states in pertinent part: "[T]he court, unless it vacates the award pursuant to Section 1286.2, shall correct the award and confirm it as corrected if the court determines that: [¶] (a) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award; [¶] (b) The arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted; or [¶] (c) the award is imperfect in a matter of form, not affecting the merits of the controversy."

The Legislature has thus substantially reduced the possibility of certain forms of error infecting the arbitration process itself (§ 1286.2, subds. (a), (b), (c)), of an arbitrator exceeding the scope of his or her arbitral powers (§§ 1286.2, subd. (d), 1286.6, subd. (b)), of some obvious and easily correctable mistake in the award (§ 1286.6, subd. (a)), of one party being unfairly deprived of a fair opportunity to present his or her side of the dispute (§ 1286.2, subd. (e)), or of some other technical problem with the award (§ 1286.6, subd. (c)). In light of these statutory provisions, the residual risk to the parties of an arbitrator's erroneous decision represents an acceptable cost—obtaining the expedience and financial savings that the arbitration process provides—as compared to the judicial process.

Although it is thus the general rule that an arbitrator's decision is not ordinarily reviewable for error by either the trial or appellate courts, Moncharsh contends three exceptions to the general rule apply to his case. First, he claims a court may review an arbitrator's decision if an error of law is apparent on the face of the award and that error causes substantial injustice. Second, he claims the arbitrator exceeded his powers. (§ 1286.2, subd. (d).) Third, he argues courts will not enforce arbitration decisions that are illegal or violate public policy. We discuss each point seriatim.

2. *Error on the Face of the Arbitration Decision*

A review of the pertinent authorities yields no shortage of proclamations that a court may vacate an arbitrator's decision when (i) an error of law appears on the face of the decision, and (ii) the error causes substantial injustice. (See, e.g., *Abbott* v. *California State Auto. Assn.* (1977) 68 Cal.App.3d 763, 771 [137 Cal.Rptr. 580].) Indeed, some cases hold the error

need only appear on the face of the award, with no mention of resulting injustice. (See, e.g., *Park Plaza, Ltd.* v. *Pietz* (1987) 193 Cal.App.3d 1414, 1420 [239 Cal.Rptr. 51].) As previously noted, however, the Legislature has set forth grounds for vacation (§ 1286.2) and correction (§ 1286.6) of an arbitration award and "[a]n error of law is not one of the grounds." (*Nogueiro* v. *Kaiser Foundation Hospitals, supra*, 203 Cal.App.3d at p. 1195, and cases cited.) Because Moncharsh contends that an additional exception to the general rule for errors of law is authorized by both common law and statute, we next determine the genesis of that notion as well as its continuing validity.

### a.   *The Early Common Law Rule*

We begin with *Muldrow* v. *Norris, supra*, 2 Cal. 74 [hereafter *Muldrow*], a case arising before the enactment of any arbitration statutes in this state. In *Muldrow*, a dispute arose between the parties and they agreed to submit the matter to a panel of three arbitrators, whose decision "should be final and conclusive." (*Ibid.*) The arbitrators reached a decision and Norris, the losing party, sought to vacate the award. This court ruled in his favor, and we quote the opinion at length because it exemplifies the contradictory rule of judicial review that has been repeated in modified form since those early days:

"The first point we propose to examine, is, as to the power of the Court below to inquire into the award now before us. It is a well settled principle that courts of equity, in the absence of statutes, will set aside awards for fraud, mistake, or accident, and it makes no difference whether the mistake be one of fact or law. It is true, under a general submission, arbitrators have power to decide upon the law and facts: and a mere mistake of law cannot be taken advantage of. The arbitrators are not bound to award on principles of dry law, but may decide on principles of equity and good conscience, and make their award *ex aequo et bono*. If, however, they mean to decide according to the law, and mistake the law, the courts will set their award aside. A distinction seems to have been taken in the books between general and special awards. In the case of a general finding, it appears to be well settled that courts will not inquire into mistakes by evidence *aliunde*: but where the arbitrators have made any point a matter of judicial inquiry by spreading it upon the record, and they mistake the law in a palpable and material point, their award will be set aside. [Citation.] The mere act of setting forth their reasons must be considered for the purpose of enabling those dissatisfied to take advantage of them. [Citation.] In all cases where the arbitrators give the reasons of their finding, they are supposed to have intended to decide according to law, and to refer the point for the opinion of the Court. In such cases, if they mistake the law, the award must be set aside;

for it is not the opinion they intended to give, the same having been made through mistake. [Citation.] In the case already cited, the Court says, 'these special awards are not to be commended, as arbitrators may often decide with perfect equity between parties, and not give good reasons for their decision; but when a special award is once before the Court, it must stand or fall by its own intrinsic correctness, tested by legal principles.' [Citations.]" (2 Cal. at pp. 77-78.)

The *Muldrow* court concluded: "In the case before us, the arbitrators have set forth the particular grounds upon which their finding was based: and it follows from the authorities already cited, that the correctness of the principles by which they must be supposed to have been governed is a proper subject for judicial inquiry." (2 Cal. at p. 78.)

Although *Muldrow, supra,* thus acknowledged that, at common law, an arbitrator need not follow the law in arriving at a decision, and that "a mere mistake of law cannot be taken advantage of" (2 Cal. at p. 77), the opinion qualified that statement and held that an award reached by an arbitrator may nevertheless be reversed if the error is "spread[] . . . upon the record" and the mistake is on a "palpable and material point." (*Ibid.*) *Muldrow* also stated that when an arbitrator gives reasons to support his decision, the award was subject to full-blown judicial oversight, and "must stand and fall by its own intrinsic correctness, tested by legal principles." (*Id.* at p. 78.)[5]

Later that same term, this court again addressed the issue. In *Tyson* v. *Wells* (1852) 2 Cal. 122, the parties agreed to submit their commercial dispute to a referee, whose decision was to be final. When the losing party challenged the referee's ruling, this court concluded the finality accorded a referee's report pursuant to statute was the same as for an arbitrator's ruling at common law. (*Id.* at p. 130.) This time avoiding any suggestion that an arbitrator's decision was subject to unqualified judicial review, we stated: "it may be regarded as the settled rule, that the Court will not disturb the award of an arbitrator . . . unless the error which is complained of, whether it be of

---

[5]By ensuring some measure of judicial control over arbitral awards, *Muldrow, supra,* was typical of courts from that early era in exhibiting suspicion of private arbitration as a means of dispute resolution. Thus, for example, courts had held that a common law submission to arbitration was revocable at any time prior to the award. (See *California Academy of Sciences v. Fletcher* (1893) 99 Cal. 207, 209 [33 P. 855]; 3 Cal.Jur., Arbitration and Award § 19, p. 55.) In addition, early courts held agreements to arbitrate future disputes were unenforceable, both at common law and under the early statutes. (*Blodgett Co.* v. *Bebe Co.* (1923) 190 Cal. 665 [214 P. 38, 26 A.L.R. 1070]; Feldman, *Arbitration Law in California: Private Tribunals for Private Government, supra,* 30 So.Cal.L.Rev. at p. 382.) Even under the initial arbitration statutes, courts held invalid an agreement that the arbitrator's decision was final and that no appeal could be taken therefrom. (*Kreiss* v. *Hotaling* (1892) 96 Cal. 617, 621 [31 P. 740]; *In re Joshua Hendy Machine Works* (1908) 9 Cal.App. 610, 611 [99 P. 1110].)

law or fact, appears on the face of the award." (*Id.* at p. 131.) Although the court purported to be following *Muldrow, supra,* 2 Cal. 74, there was no qualification that the error must be on a "palpable and material point." (*Id.* at p. 77.)

Six months later, we addressed the issue again. In *Headley* v. *Reed* (1852) 2 Cal. 322, another case involving a reference, we wrote, "According to the rule settled in [*Muldrow*], the decision of the referee can only be set aside on account of fraud or *gross error of law or fact apparent on its face.*" (*Id.* at p. 325, italics added.) The *Headley* court thus injected a new factor into the *Muldrow* test—gross error—but did not repeat *Muldrow*'s assertion that an arbitrator's decision was subject to full-blown judicial review.

These three early cases—*Muldrow, Tyson, Headley*—involved arbitration (or a reference, which was considered functionally equivalent to arbitration) at common law. From them, we can perceive the beginnings of the rule permitting judicial review of an arbitrator's ruling if error appeared on the face of the award.

### b.  *The Development of Statutory Law before 1927*

Around the time the aforementioned cases were decided, the Legislature enacted the Civil Practice Act of 1851 and established the rules governing statutory arbitration. In section 386 of that act, the Legislature specified the grounds on which a court could vacate an arbitrator's award. "The Court, on motion, may vacate the award upon either of the following grounds . . . : [¶] 1st. That it was procured by corruption or fraud: [¶] 2d. That the arbitrators were guilty of misconduct, or committed gross error in refusing, on cause shown, to postpone the hearing, or in refusing to hear pertinent evidence, or otherwise acted improperly, in a manner by which the rights of the party were prejudiced: [¶] [3d.] That the arbitrators exceeded their powers in making their award; or that they refused, or improperly omitted, to consider a part of the matters submitted to them; or that the award is indefinite, or cannot be performed." (Stats. 1851, Second Sess., tit. X, ch. IV, § 386, pp. 112-113, hereafter section 386 of the Civil Practice Act.) Significantly, there was no express provision permitting judicial review if there was a gross error on the face of the award. Nor was a court permitted to vacate an award if it concluded it lacked "intrinsic [legal] correctness," as suggested in *Muldrow, supra,* 2 Cal. at pages 77-78.

This court first considered section 386 of the Civil Practice Act in *Peachy et al.* v. *Ritchie* (1854) 4 Cal. 205 (hereafter *Peachy*). In that case, the losing party to an arbitration moved to vacate the award, claiming among other

things that "the arbitrators refused to hear pertinent evidence," and "the arbitrators exceeded their powers." (*Id.* at p. 206.) The trial court "refused to entertain the motion" on procedural grounds. (*Id.* at p. 207.) Although the grounds asserted in support of the motion to vacate seemed to fall within the then-existing statutory grounds for vacation, this court refused to examine the decision of the court below, finding the asserted grounds to vacate the award "wholly insufficient. [¶] Our Statute is but a re-affirmance of the common law, and gives to the parties no higher rights than they might have asserted in a court of equity in case of mistake, fraud or accident. The misconduct, contemplated by the Statute, was intended to apply to improper conduct in fact, such as that of a witness or juror, as contra-distinguished from mere error of judgment. [¶] The whole doctrine of Arbitration was fully reviewed by this Court in the case of Muldrow *v.* Norris, 2 Cal. 74, in which we decided that we would not disturb the general finding of arbitrators, and that an award could not be set aside except in the cases there mentioned." (*Peachy, supra,* 4 Cal. at p. 207, punctuation and capitalization in original.)

The *Peachy* opinion is noteworthy for two reasons. First, it failed to construe strictly the terms of the statute. Thus, although the appellant raised grounds for review that were apparently permitted under section 386 of the Civil Practice Act (i.e., claims that the arbitrator failed to hear pertinent evidence and exceeded his powers), the court declined to invoke those statutory provisions. Instead, it concluded that the new statute was merely an affirmation of the common law and that the statute granted disputants no greater rights than they would have had before its enactment. The court concluded that permitting a litigant to attack an award on the asserted statutory grounds would destroy this mode of adjusting private differences. (*Peachy, supra,* 4 Cal. at p. 207.)

Second, *Peachy* reaffirmed the availability of judicial review of arbitration awards as limited in *Muldrow, supra,* 2 Cal. 74, expressly mentioning mistake, fraud, and accident. Thus, despite the enactment of section 386 of the Civil Practice Act, the availability of judicial review of arbitration awards was still controlled by the common law principles established in earlier cases. (*Peachy, supra,* 4 Cal. at p. 207.)

The evolution away from an emphasis on the common law, first suggested by the enactment of the Civil Practice Act of 1851, continued in *Carsley* v. *Lindsay* (1859) 14 Cal. 390. In that case, partners in the Salamander Iron Works desired to dissolve their partnership and submitted their dispute to an arbitrator, who found in Carsley's favor. When Lindsay successfully moved the trial court to vacate the award, Carsley appealed. In support of the trial court's decision, Lindsay argued, inter alia, that the award was properly

vacated because it was contrary to law and evidence. This court rejected that argument, reasoning, "we are not aware that an award of an Arbitrator can be impeached on this ground. . . . An impeachment on this ground was not admissible at common law, and, if it were, our statute, (Practice Act, [§] 385 *et seq.*) prescribes *other* grounds, as those upon which *alone* the award can be vacated by the District Court upon motion." (*Carsley, supra,* at p. 394, first italics in original, second added, citing *Muldrow, supra,* 2 Cal. 74; *Peachy, supra,* 4 Cal. 205.) Although *Carsley* cited *Muldrow* and its progeny, it is clear the court had subtly shifted its position to place greater reliance on the statutory provisions as the exclusive grounds on which an arbitration award could be vacated.

This trend continued when, in 1872, section 386 of the Civil Practice Act was codified without change as Code of Civil Procedure former section 1287. We addressed the new statute in *In re Connor* (1900) 128 Cal. 279 [60 P. 862]. In that case, Pratt and Connor had a dispute over a promissory note and submitted the controversy to an arbitrator, who found in Connor's favor. Pratt moved to modify the award, and to vacate a portion of it. When the trial court denied his motion, he appealed, claiming witnesses in the hearing below were not sworn. This court affirmed, reasoning, "Where controversies are voluntarily submitted to arbitrators who need not be, and frequently are not, learned in the law, it is not contemplated that their awards will be viewed in the light of that strict adherence to legal rules and procedure which is expected in purely judicial trials." (*Id.* at pp. 281-282.) After quoting *Muldrow, supra,* 2 Cal. 74, the *Connor* court flatly stated: "*the only grounds for a motion to vacate or modify an award are specified in sections 1287 and 1288 of the code*; and the grounds for vacating an award (Code Civ. Proc., sec. 1287) include only cases of fraud, corruption, misconduct, 'or gross error,' . . . . These grounds do not include mere ordinary errors nor even faults of judgment. They refer to things that are 'gross.'" (*In re Connor, supra* at p. 282, italics added.)

By the time of *In re Connor, supra,* then, this court had declined to perpetuate *Muldrow*'s suggestion that courts could indulge in unfettered review of the "intrinsic correctness" of an arbitrator's decision. Indeed, the opposite was true; courts following the legislative scheme concluded the grounds for vacating an award were exclusively those set forth by statute. The *Connor* court, however, retained an exception to this general rule. *Muldrow*'s holding, permitting judicial review of errors "spread upon the record" affecting a "palpable and material point" (*Muldrow, supra,* 2 Cal. at p. 77), was transmogrified in *In re Connor* into a rule permitting judicial review of an award if it contained a "gross" error, although former section 1287 did not specify that ground as a permissible reason to vacate an award.

(*In re Connor, supra,* 128 Cal. at p. 282.) Thus, although emphasizing the exclusivity of the statutory grounds for vacating an arbitration award, the *Connor* court retained a vestige of the common law rule that provided more generous judicial oversight.

Sixteen years later, this court retreated somewhat from *In re Connor, supra,* 128 Cal. 279, and apparently returned to the rule developed in earlier cases (most notably *Muldrow, supra,* 2 Cal. 74, and especially *Peachy, supra,* 4 Cal. 205), that deemphasized the exclusivity of the statutory grounds for vacating an award. In *Utah Const., supra,* 174 Cal. 156, a dispute arose between a railroad and a construction company over whether a debt had been discharged. The parties submitted their dispute to an arbitrator, who ruled in the railroad's favor. The construction company moved to vacate the award and appealed when the trial court denied its motion. We affirmed the trial court's decision, citing *Muldrow, supra,* 2 Cal. 74, and its progeny. "The code provisions are in aid of the common-law remedy of arbitration, a reaffirmance thereof, and do not alter its principles. [Citations.] An award made upon an unqualified submission cannot be impeached on the ground that it is contrary to law, unless the error appears on its face and causes substantial injustice. (*Carsley* v. *Lindsay,* [*supra,*] 14 Cal. 390; Morse on Arbitration, 296.)" (*Utah Const., supra,* 174 Cal. at pp. 160-161.)

Although *Carsley* v. *Lindsay, supra,* 14 Cal. 390, was cited in support, the basis for this court's apparent resurrection of the common law dominated view of judicial review of arbitration awards is puzzling. As explained, *ante,* at pages 17-18, *Carsley* held that an arbitrator's award cannot be "impeached" merely because it contained an error of law, and that even if it could, section 386 of the Civil Practice Act (then codified verbatim in former section 1287) set forth the exclusive grounds to vacate an award. (*Carsley* v. *Lindsay, supra* at p. 394.) Thus, close scrutiny reveals *Carsley* does not support the proposition for which it was cited in the *Utah Const.* opinion.

*Utah Const.*'s citation to Morse, The Law of Arbitration and Award (1872), is similarly unavailing. That treatise states that when parties submit to an arbitrator under a general submission, "such award is conclusive as well of the law as the fact; and the court upon the return of such an award will not inquire whether the referees, thus authorized, have decided correctly upon principles of law or not." (*Id.* at p. 296, fn. omitted.) As is clear, Morse does not provide support for the conclusion in *Utah Const., supra,* 174 Cal. 156, that a court can vacate an arbitration award for a legal error appearing on the face of the award causing substantial injustice.

By the time this court decided *Utah Const., supra,* 174 Cal. 156, the law governing judicial review of arbitration awards was in a state of flux. The

initial common law view permitting unfettered review of an award's "intrinsic correctness," first set forth in *Muldrow, supra*, 2 Cal. 74, had fallen by the wayside. More importantly, an alternate rule permitting review of an error—or perhaps, a "gross" error—on the face of the award causing substantial injustice, also begun with *Muldrow*, waned with the advent of statutes (first in 1851, then in 1872) governing the area, and had also apparently fallen into disfavor (*Carsley v. Lindsay, supra*, 14 Cal. 390), although the notion was not completely abandoned. (*In re Connor, supra*, 128 Cal. 279.) By 1916, however, that notion had been revived in *Utah Const., supra*, 174 Cal. 156. Indeed, *Utah Const.* has been cited in appellate decisions in the last 10 years for this very proposition. (See, e.g., *Park Plaza, Ltd. v. Pietz, supra*, 193 Cal.App.3d at p. 1420.) After 1927, the limits of judicial review of arbitration awards would evolve still further, this time shaped by additional legislation.

### c. Development of the Law After 1927

By 1926, the popularity of private arbitration as a viable alternate to resolving disputes outside court was in decline. "[W]idespread dissatisfaction with our laws respecting arbitration [had] been often expressed by chambers of commerce, mercantile associations and business men generally." (First Rep. of the Judicial Council of Cal. (1926) exhibit B, p. 57 [hereafter First Report].) In addition, there were indications that the organized bar also opposed private arbitration. (See Proceedings of the Fifteenth Annual Meeting Cal. State Bar Assn. (1924) pp. 70-73, quoted in Feldman, *Arbitration Law in California: Private Tribunals for Private Government, supra*, 30 So.Cal.L.Rev. at p. 388, fn. 42.) In 1926, Los Angeles County reported its clerk filed only three submissions to arbitrate; Alameda County reported no petitions were filed that year. (First Report, *supra*, p. 57.)

The reason for the dearth of submissions to arbitration could be traced to two factors. First, private arbitration was no more efficient than regular judicial adjudication due to the statutory rule permitting a disputant to revoke his or her submission to arbitrate "at any time before the award is made." (Former § 1283; see also First Report, *supra*, p. 58.) Second, private arbitration was not viewed as a particularly valuable method of dispute resolution because courts would not enforce contractual provisions agreeing to submit *future* disputes to arbitration. (*Blodgett Co. v. Bebe Co., supra*, 190 Cal. at p. 667.)

These perceived flaws were remedied when, in 1927, the Legislature amended the statutes governing private arbitration. (Stats. 1927, ch. 225, p. 403 et seq.) We may infer that by amending the existing statutes in response

to the report to the Judicial Council of California, the Legislature intended to encourage the use of private arbitration. The 1927 amendments thus represent a clear legislative expression of public policy in favor of private arbitration as an alternate method of dispute resolution.

In addition to those changes, former section 1287—setting forth the grounds for vacating an arbitration award—was recodified and renumbered as new section 1288. That section provided in pertinent part: "In either of the following cases the superior court of the county or city and county in which said arbitration was had must make an order vacating the award, upon the application of any party to the arbitration: [¶] (*a*) Where the award was procured by corruption, fraud or undue means. [¶] (*b*) Where there was corruption in the arbitrators, or either of them. [¶] (*c*) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence, pertinent and material to the controversy; or of any other misbehaviors, by which the rights of any party have been prejudiced. [¶] (*d*) Where the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final and definite award, upon the subject matter submitted, was not made." (Stats. 1927, ch. 225, § 9, pp. 406-407.)

The major changes in the new statute were: (i) the addition in subdivision (a) permitting vacation when the award was procured by "undue means"; and (ii) the addition to subdivision (d) permitting vacation when the arbitrators "so imperfectly executed [their powers] that a mutual, final and definite award . . . was not made." (Former § 1288, Stats. 1927, ch. 225, § 9, p. 407.)

The limits of judicial review of an arbitration award under the 1927 amendments were addressed in *Pacific Vegetable, supra,* 29 Cal.2d 228. In that case, the seller claimed its contract with a buyer to ship copra from the Fiji Islands to San Diego, California, was cancelled due to the outbreak of World War II. The matter was submitted to an arbitration panel, which found in favor of the seller. The buyer moved in superior court to vacate the award, claiming it was not given an adequate opportunity to address the seller's arguments.

The *Pacific Vegetable* court stated that, "The merits of the controversy between the parties are not subject to judicial review. By section 1288 of the Code of Civil Procedure the superior court has power to vacate an award [quoting the terms of section 1288]." (*Pacific Vegetable, supra,* 29 Cal.2d at p. 233.) Later, the court explained, "The form and sufficiency of the evidence, and the credibility and good faith of the parties, in the absence of

corruption, fraud or undue means in obtaining an award, are not matters for judicial review." (*Id.* at p. 238.) It is significant that the court twice emphasized the statutory grounds for vacating an award, but never reiterated the old common law based rule permitting review for an error on the face of the award that causes substantial injustice. In this way, the *Pacific Vegetable* court suggested that former section 1288—and not the common law— established the limits of judicial review of arbitration awards.[6]

A few years after *Pacific Vegetable, supra,* 29 Cal.2d 228, the murky issue of the scope of judicial review of arbitration awards gained some much-needed clarity. In *Crofoot* v. *Blair Holdings Corp., supra,* 119 Cal.App.2d 156 [hereafter *Crofoot*], Justice Raymond Peters, then the Presiding Justice of the Court of Appeal for the First Appellate District, Division One, confronted a case involving alleged fraud in a complex stock deal. After numerous lawsuits were filed in California and New York, the interested parties agreed to submit the entire matter to arbitration. Following presentation of evidence to the arbitrator, he rendered a five-page award accompanied by findings and opinions covering two hundred fifteen pages. The overall result was a judgment in favor of Blair Holdings Corporation (Blair) and against Crofoot. Blair successfully moved in superior court to correct and confirm the award, and Crofoot appealed.

At the outset, the Court of Appeal explained that after the 1927 amendments to the Code of Civil Procedure, written agreements to arbitrate were governed exclusively by statute and there was "no field for a common law arbitration to operate . . . ." (*Crofoot, supra,* 119 Cal.App.2d at p. 181.) The appellate court therefore rejected Crofoot's argument that the arbitrator lacked jurisdiction because Blair never secured a court order submitting the cases to arbitration. "Prior to [1927], it was undoubtedly the law that both common law and statutory arbitrations existed in this state, that in the absence of [a court] order of submission the arbitration was deemed to be a common law arbitration, and that in such common law arbitration the award could only be enforced by an independent action and could not be entered as a judgment. . . . [¶] Since 1927, however, these limitations on statutory

---

[6]Although *Pacific Vegetable, supra,* 29 Cal.2d 228, thus implied the statutory grounds were exclusive, its ultimate meaning was somewhat ambiguous, for it also noted that " 'The statutory provisions for a review thereof are manifestly for the sole purpose of preventing the misuse of the proceeding, where corruption, fraud, misconduct, *gross error, or mistake* has been carried into the award to the substantial prejudice of a party to the proceeding.' " (*Id.* at p. 240, quoting *Utah Const., supra,* 174 Cal. at p. 159, italics added.) Because this quotation came in a paragraph discussing the requirement that a challenger must show prejudice flowing from the alleged error, however, it is doubtful the court meant to embrace the old rule permitting a court to vacate an award when error appeared on the face of the award causing substantial injustice.

arbitration no longer exist." (*Id.* at pp. 180-181.) After noting some of the differences between common law and statutory arbitration, the appellate court concluded, "that by the adoption of the 1927 statute, the Legislature intended to adopt a comprehensive all-inclusive statutory scheme applicable to all written agreements to arbitrate, and that in such cases the doctrines applicable to a common law arbitration were abolished." (*Id.* at p. 182.)[7]

On the question of arbitral finality, the *Crofoot* court was more circumspect, admitting "The law is not quite so clear as to a court's powers of review over questions of law. The earlier cases held that the court had the power to review errors of law, at least where they appeared upon the face of the award.[8] (*In re Frick*, 130 Cal.App. 290 [19 P.2d 836]; *Utah Const. Co. v. Western Pac. Ry. Co.*, 174 Cal. 156 [162 P. 631].) The later cases have gone much farther in granting finality to the award even as to questions of law. In *Pacific Vegetable Oil Corp.* v. *C.S.T., Ltd.*, [*supra,*] 29 Cal.2d 228, 233, it was bluntly held that 'The merits of the controversy between the parties are not subject to judicial review.' " (*Crofoot, supra,* 119 Cal.App.2d at p. 185.) After surveying cases that note an arbitrator need not rule in conformity with the law, the *Crofoot* court made a dramatic conclusion: "Under these cases it must be held that in the absence of some limiting clause in the arbitration agreement, the merits of the award, either on questions of fact or of law, *may not be reviewed except as provided in the statute.*" (*Crofoot, supra,* 119 Cal.App.2d at p. 186, italics added.)

This bold statement reflected the end result of many years of evolution in the law, from the common law roots of *Muldrow, supra,* 2 Cal. 74, through the growth of the rule permitting review of errors on the face of the award (*Utah Const., supra,* 174 Cal. at pp. 160-161), and through the important changes occasioned by the 1927 amendments as interpreted first by *Pacific Vegetable, supra,* 29 Cal.2d 228, and then definitively by *Crofoot, supra,* 119 Cal.App.2d 156. Later opinions of this court relied heavily on the reasoning and conclusion of the *Crofoot* opinion to declare that the sole grounds for

---

[7]This concliusion was foreshadowed three years earlier by a scholarly article on which the *Crofoot* court relied. (see *Crofoot, supra,* 119 Cal.App.2d at p. 182.) The article noted that "The present statue, a detailed one. contravenes common law principles almost point by point. Legislative purpose to abolish applicable common law might be found from this fact alone. The statute obliterates all guideposts under which the previous statutes permitted notice whether one was contracting for statutory or common law arbitration. It is reasonable that parties who voluntarily agree in writing to arbitrate should be bound by the statute and should not as an afterthought be permitted to escape from their contract through the portals of the common law." (Kagel, *Labor and Commercial Arbitration Under the California Arbitration Statue* (1950) 38 Cal.L.Rev. 799, 809.)

[8]At this point, the *Crofoot* court inserted a footnote and stated: "But even prior to 1927 it was held that only 'gross' errors of an arbitrator were reviewable—*In re Connor,* 128 Cal. 279, 282 [60 P. 862]."

vacating an arbitration award were those set forth by statute. (See *O'Malley, supra*, 48 Cal.2d at pp. 111-112; *Griffith Co.* v. *San Diego Col. for Women, supra*, 45 Cal.2d at pp. 515-516.)

In the years following *Crofoot, supra*, 119 Cal.App.2d 156, a large majority of appellate decisions also adopted the *Crofoot* conclusion that former section 1288 set forth the exclusive means for vacating an arbitration award. (*Cecil* v. *Bank of America* (1956) 142 Cal.App.2d 249, 251 [298 P.2d 24] ["the merits of the award . . . may not be reviewed except as provided in the statute"]; *Downer Corp.* v. *Union Paving Co.* (1956) 146 Cal.App.2d 708, 715 [304 P.2d 756] [same]; *Wetsel* v. *Garibaldi* (1958) 159 Cal.App.2d 4, 13 [323 P.2d 524], disapproved on other grounds, *Posner* v. *Grunwald-Marx, Inc., supra*, 56 Cal.2d at p. 183 [same]; *Ulene* v. *Murray Millman of California* (1959) 175 Cal.App.2d 655, 660 [346 P.2d 494] [same]; *Meat Cutters Local No. 439* v. *Olson Bros.* (1960) 186 Cal.App.2d 200, 203-204 [8 Cal.Rptr. 789] [same]; *Government Employees Ins. Co.* v. *Brunner* (1961) 191 Cal.App.2d 334, 340-341 [12 Cal.Rptr. 547] [same]; but see, *U.S. Plywood Corp.* v. *Hudson Lumber Co.* (1954) 124 Cal.App.2d 527, 532 [269 P.2d 93] [reiterating the "error on face of award" standard].) Some cases did not expressly recognize the exclusiveness of the statutory grounds, but implied that point by flatly stating the merits of an arbitration award were not subject to judicial review. (*Atlas Floor Covering* v. *Crescent House & Garden, Inc.* (1958) 166 Cal.App.2d 211, 216 [333 P.2d 194]; *Gerard* v. *Salter* (1956) 146 Cal.App.2d 840, 846 [304 P.2d 237].)

In 1956, the Legislature authorized the California Law Revision Commission to study and determine whether the statutory arbitration scheme should be revised. (Assem. Conc. Res. No. 10, Stats. 1957 (1956 Reg. Sess.) res. ch. 42, Topic 14, p. 264.) The commission's report was transmitted to the Governor in December 1960. (Recommendation and Study Pertaining to Arbitration (Dec. 1960) 3 Cal. Law Revision Com. Rep. (1960) [hereafter Arbitration Study].) On the subject of the scope of judicial review, the report explained that, "Nothing in the California statute defines the permissible scope of review by the courts. Numerous court rulings have, however, developed the following basic principles which set the limits for any court review: [¶] . . . [¶] (2) Merits of an arbitration award either on questions of fact or of law may not be reviewed *except as provided for in the statute* in the absence of some limiting clause in the arbitration agreement. [¶] . . . [9] [¶] (5) Statutory provisions for a review of arbitration proceedings are for the sole purpose of preventing misuse of the proceedings where corruption,

---

[9]For this proposition, the report cited *O'Malley, supra*, 48 Cal.2d 107, and *Crofoot, supra*, 119 Cal.App.2d 156, among other cases.

fraud, misconduct, gross error or mistake[10] has been carried into the award to the substantial prejudice of a party to the proceedings." (Arbitration Study, *supra*, pp. G-53 to G-54, italics added.)

The Arbitration Study emphasized that arbitration should be the end of the dispute and that "the ordinary concepts of judicial appeal and review are not applicable to arbitration awards. Settled case law is based on this assumption." (Arbitration Study, *supra*, p. G-54.) After surveying the state of the law, the report concluded that although the California statutes do not "attempt to express the exact limits of court review of arbitration awards, . . . no good reason exists to codify into the California statute the case law as it presently exists." (*Ibid.*) Further, the report recommended that the "present grounds for vacating an award should be left substantially unchanged." (*Id.* at p. G-57.) The report of the California Law Revision Commission thus concluded that the state of the law, as represented by *Crofoot, supra,* 119 Cal.App.2d 156, and its progeny, should not be altered by any statutory amendments.

The California Legislature thereafter enacted a revision of the arbitration statutes. (Stats. 1961, ch. 461, p. 1540 et seq.) Former section 1288, which had set forth the grounds on which an award could be vacated, was slightly altered and renumbered as new section 1286.2, and this section still controls today.[11] The new grounds are "substantially a restatement of the grounds set out in a bit more archaic form in the 1927 statute." (Feldman, *Arbitration Modernized—The New California Arbitration Act, supra,* 34 So.Cal.L.Rev. at p. 433.) It is significant that there is no mention of the rule permitting judicial review for errors apparent on the face of the arbitration award causing substantial injustice. ▆▆ We may infer from this omission that the Legislature intended to reject that rule, and instead adopt the position taken in case law and endorsed in the Arbitration Study, that is, "that in the absence of some limiting clause in the arbitration agreement, the merits of the award, either on questions of fact or of law, may not be reviewed except as provided in the statute." (*Crofoot, supra,* 119 Cal.App.2d at p. 186.)

The Legislature's intent is further revealed by an examination of other statutes. For example, in providing for arbitrating disputes arising from public construction contracts, section 1296 directs that "a court shall . . .

---

[10]Although the inclusion of the phrase "gross error or mistake" may suggest the commission approved of (or at least recognized) the rule permitting judicial review of gross errors on the face of the award causing substantial injustice, the report later refutes this notion, stating, "Even a gross error or mistake in an arbitrator's judgment is not sufficient grounds for vacation, unless the error amounts to actual or constructive fraud." (Arbitration Study, *supra,* p. G-55.)

[11]The current version of section 1286.2 is quoted on pages 12-13, *ante.*

vacate the award if after review of the award it determines either that the award is not supported by substantial evidence or that it is based on an error of law." ■ By specifically providing in that provision for judicial review and correction of error, but not in section 1286.2, we may infer that the Legislature did not intend to confer traditional judicial review in private arbitration cases. " ' "Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." ' [Citation.]" (*People* v. *Drake* (1977) 19 Cal.3d 749, 755 [139 Cal.Rptr. 720, 566 P.2d 622].)

The law has thus evolved from its common law origins and moved towards a more clearly delineated scheme rooted in statute. ■ A majority of California appellate decisions have followed the modern rule, established by *Pacific Vegetable, supra,* 29 Cal.2d 228, and *Crofoot, supra,* 119 Cal.App.2d 156, and generally limit judicial review of private arbitration awards to those grounds specified in sections 1286.2 and 1286.6. (See, e.g., *Severtson* v. *Williams Construction Co.* (1985) 173 Cal.App.3d 86, 92-93 [220 Cal.Rptr. 400]; *Lindholm* v. *Galvin, supra,* 95 Cal.App.3d at pp. 450-451; *Baseball Players, supra,* 59 Cal.App.3d at p. 498; *Santa Clara-San Benito etc. Elec. Contractors' Assn.* v. *Local Union No. 332* (1974) 40 Cal.App.3d 431, 437 [114 Cal.Rptr. 909]; *State Farm Mut. Auto. Ins. Co.* v. *Guleserian* (1972) 28 Cal.App.3d 397, 402 [104 Cal.Rptr. 683]; *Jones* v. *Kvistad* (1971) 19 Cal.App.3d 836, 840-843 [97 Cal.Rptr. 100]; *Allen* v. *Interinsurance Exchange* (1969) 275 Cal.App.2d 636, 641 [80 Cal.Rptr. 247]; *Durand* v. *Wilshire Ins. Co.* (1969) 270 Cal.App.2d 58, 61 [75 Cal.Rptr. 415].)

This view is consistent with a large majority of decisions in other states. Although California has not adopted the Uniform Arbitration Act, more than half the states have done so. (See 7 West's U. Laws Ann. (1985) U. Arbitration Act, 1991 Cum. Ann. Pocket Pt., p. 1.) The statutory grounds to vacate a private arbitration award set forth in the uniform law largely mirror those codified in section 1286.2, however,[12] and most states have concluded that these grounds are exclusive. (See, e.g., *Verdex Steel and Const. Co.* v. *Board of Supervisors* (1973) 19 Ariz.App. 547 [509 P.2d 240]; *Affiliated*

---

[12]Section 12 of the Uniform Arbitration Act states in pertinent part:

"(a) Upon application of a party, the court shall vacate an award where:

"(1) The award was procured by corruption, fraud or other undue means;

"(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

"(3) The arbitrators exceeded their powers;

"(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the

*Marketing, Inc.* v. *Dyco Chem. & Coatings, Inc.* (Fla.Dist.Ct.App. 1976) 340 So.2d 1240, 1242, cert. den. (Fla. 1977) 353 So.2d 675; *Morrison-Knudson* v. *Makahuena Corp.* (1983) 66 Hawaii 663, 668 [675 P.2d 760]; *Bingham County Com'n* v. *Interstate Elec. Co.* (1983) 105 Idaho 36, 42 [665 P.2d 1046, 1052]; *Konicki* v. *Oak Brook Racquet Club, Inc.* (1982) 110 Ill.App.3d 217, 223 [441 N.E.2d 1333, 1337]; *State, Dept. of Admin., Per. Div.* v. *Sightes* (Ind.Ct.App. 1981) 416 N.E.2d 445, 450; *City of Sulphur* v. *Southern Builders* (La.Ct.App. 1991) 579 So.2d 1207, 1210, cert. den. 587 So.2d 629; *Plymouth-Carver School Dist.* v. *J. Farmer* (1990) 407 Mass. 1006, 1007 [553 N.E.2d 1284, 1285] [rescript opinion]; *AFSCME Council 96* v. *Arrowhead Reg. Corr. Bd.* (Minn. 1984) 356 N.W.2d 295, 299; *Savage Educ. Ass'n* v. *Trustees of Richland Cty.* (1984) 214 Mont. 289, 295-296 [692 P.2d 1237, 1240]; *New Shy Clown Casino, Inc.* v. *Baldwin* (1987) 103 Nev. 269, 271 [737 P.2d 524, 525] [*per curiam*]; *Kearny PBA No. 21* v. *Town of Kearny* (1979) 81 N.J. 208, 220-221 [405 A.2d 393, 399]; *Cyclone Roofing Co.* v. *David M. LaFave Co.* (1984) 312 N.C. 224, 233-234 [321 S.E.2d 872, 879]; *Aamot* v. *Eneboe* (S.D. 1984) 352 N.W.2d 647, 649; *Util. Trailer Sales of Salt Lake* v. *Fake* (Utah 1987) 740 P.2d 1327, 1329; *Milwaukee Police Ass'n* v. *City of Milwaukee* (1979) 92 Wis.2d 175, 181-182 [285 N.W.2d 133, 136-137]; but see *Texas West Oil & Gas Corp.* v. *Fitzgerald* (Wyo. 1986) 726 P.2d 1056, 1060-1061 [finding statutory grounds to vacate an arbitration award not exclusive].)

Although the matter would seem to have been put to rest, several California decisions rendered since the 1961 statutory amendments have inexplicably resurrected the view in *Utah Const., supra,* 174 Cal. 156, that an arbitration award may be vacated when an error appears on the face of the award and causes substantial injustice. (See, e.g., *Schneider* v. *Kaiser Foundation Hospitals* (1989) 215 Cal.App.3d 1311, 1317 [264 Cal.Rptr. 227]; *Park Plaza, Ltd.* v. *Pietz, supra,* 193 Cal.App.3d at p. 1420; *Ray Wilson Co.* v. *Anaheim Memorial Hospital Assn., supra,* 166 Cal.App.3d at p. 1091; *Hirsch* v. *Ensign* (1981) 122 Cal.App.3d 521, 529 [176 Cal.Rptr. 17]; *Abbott* v. *California State Auto Assn., supra,* 68 Cal.App.3d at p. 771; *Campbell* v. *Farmer's Ins. Exch.* (1968) 260 Cal.App.2d 105, 111-112 [67 Cal.Rptr. 175]; see generally, 6 Cal.Jur.3d, Arbitration and Award, § 83, pp. 145-147.)

In light of the development of decisional law embracing as exclusive the statutory grounds to vacate an arbitration award, as well as the apparent

---

hearing, contrary to the provisions of Section 5, as to prejudice substantially the rights of a party; or

"(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under Section 2 and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by a court of law or equity is not a ground for vacating or refusing to confirm the award." (7 West's U. Laws Ann. (1985) U. Arbitration Act, § 12, subd. (a).)

intent of the Legislature to generally exclude nonstatutory grounds to vacate an award, we adhere to the *Pacific Vegetable/Crofoot* line of cases that limit judicial review of private arbitration awards to those cases in which there exists a statutory ground to vacate or correct the award. Those decisions permitting review of an award where an error of law appears on the face of the award causing substantial injustice have perpetuated a point of view that is inconsistent with the modern view of private arbitration and are therefore disapproved.

### 3. *The Arbitrator Did Not Exceed His Powers*

Section 1286.2, subdivision (d), provides for vacation of an arbitration award when "The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." ▮ Moncharsh argues this statutory exception to the rule generally precluding judicial review of arbitration awards applies to his case. It is unclear, however, on what theory Moncharsh would have us conclude the arbitrator exceeded his powers. It is well settled that "arbitrators do not exceed their powers merely because they assign an erroneous reason for their decision." (*O'Malley, supra*, 48 Cal.2d at p. 111; *Hacienda Hotel v. Culinary Workers Union* (1985) 175 Cal.App.3d 1127, 1133 [223 Cal.Rptr. 305].) A contrary holding would permit the exception to swallow the rule of limited judicial review; a litigant could always contend the arbitrator erred and thus exceeded his powers. To the extent Moncharsh argues his case comes within section 1286.2, subdivision (d) merely because the arbitrator reached an erroneous decision, we reject the point.

Moreover, consistent with our arbitration statutes and subject to the limited exceptions discussed in section 4, *post*, it is within the "powers" of the arbitrator to resolve the entire "merits" of the "controversy submitted" by the parties. (§ 1286.2, subd. (d); § 1286.6, subd. (b), (c).) Obviously, the "merits" include all the contested issues of law and fact submitted to the arbitrator for decision. The arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement. Moncharsh does not argue that the arbitrator's award strayed beyond the scope of the parties' agreement by resolving issues the parties did not agree to arbitrate. The agreement to arbitrate encompassed "[a]ny dispute arising out of" the employment contract. The parties' dispute over the allocation of attorney's fees following termination of employment clearly arose out of the employment contract; the arbitrator's award does no more than resolve that dispute. Under these circumstances, the arbitrator was within his "powers" in resolving the questions of law presented to him. The award is not subject to vacation or correction based on any of the statutory grounds asserted by Moncharsh.

### 4. *Illegality of the Contract Permits Judicial Review*

Moncharsh next contends the arbitrator's award is subject to judicial review because paragraph X-C of the employment agreement is illegal and in violation of public policy. Focussing on the fee-splitting provision of the employment agreement, he contends that despite the limited scope of judicial review of arbitration awards, such review has historically been available when one party alleges the underlying contract, a portion thereof, or the resulting award, is illegal or in violation of public policy. Before addressing the merits of the claim, we first discuss whether Moncharsh adequately preserved the issue for appellate review.

#### a. *Waiver*

■ Respondent Heily & Blase suggests Moncharsh waived the issue of illegality by failing to object to arbitration on this ground. We reject the claim because, as we explain below, Moncharsh's allegation that paragraph X-C was illegal, even if true, does not render illegal either (i) the entire employment agreement, or (ii) the agreement to arbitrate itself. Accordingly, his illegality claim was an arbitrable one, and he did not waive the issue by failing to object to arbitration on this ground.

Section 1281.2 states that when a written agreement to arbitrate exists, the court shall compel the parties to arbitrate their dispute "unless it determines that: [¶] . . . [¶] (b) *Grounds exist for the revocation of the agreement.*" (Italics added.) Although this statute does not expressly state whether grounds must exist to revoke the entire contract, the arbitration agreement only, or some other provision of the contract, a fair reading of the statutory scheme reveals the Legislature must have meant revocation of the arbitration agreement.

For example, section 1281 states "A written agreement *to submit to arbitration* an existing controversy . . . is valid . . . save upon such grounds as exist for the revocation of any contract." (Italics added.) Section 1281.2 also speaks in terms of an "arbitration agreement" and a "written agreement to arbitrate." Thus, the plain meaning of section 1281.2 requires enforcement of the *arbitration* agreement unless there exist grounds for revocation of that agreement.

If a contract includes an arbitration agreement, and grounds exist to revoke the entire contract, such grounds would also vitiate the arbitration agreement. Thus, if an otherwise enforceable arbitration agreement is contained in an illegal contract, a party may avoid arbitration altogether. (*California State Council of Carpenters* v. *Superior Court* (1970) 11 Cal.App.3d

144, 157 [89 Cal.Rptr. 625] [hereafter *Carpenters*]; *Bianco* v. *Superior Court* (1968) 265 Cal.App.2d 126 [71 Cal.Rptr. 322].)

By contrast, when—as here—the alleged illegality goes to only a portion of the contract (that does not include the arbitration agreement), the entire controversy, including the issue of illegality, remains arbitrable. (*Green* v. *Mt. Diablo Hospital Dist.* (1989) 207 Cal.App.3d 63, 71 [254 Cal.Rptr. 689]; *Carpenters*, *supra*, 11 Cal.App.3d at p. 157; *Baseball Players*, *supra*, 59 Cal.App.3d at p. 503 (dis. opn. of Brown (H.C.), J.) ["question of illegality is one which may be considered by the arbitrators"].)[13]

We apply this rule here. Moncharsh does not contend the alleged illegality constitutes grounds to revoke the entire employment contract. Nor does he contend the alleged illegality voids the arbitration clause of that contract. Accordingly, the legality of the fee-splitting provision was a question for the arbitrator in the first instance. Thus, Moncharsh was not required to first raise the issue of illegality in the trial court in order to preserve the issue for later judicial review.

The issue would have been waived, however, had Moncharsh failed to raise it *before the arbitrator*. Any other conclusion is inconsistent with the basic purpose of private arbitration, which is to finally decide a dispute between the parties. Moreover, we cannot permit a party to sit on his rights, content in the knowledge that should he suffer an adverse decision, he could then raise the illegality issue in a motion to vacate the arbitrator's award. A contrary rule would condone a level of "procedural gamesmanship" that we have condemned as "undermining the advantages of arbitration." (*Ericksen*, *supra*, 35 Cal.3d at p. 323 [rejecting a rule permitting determination by courts of preliminary issues prior to submission to arbitration]; see also *Christensen* v. *Dewor Developments* (1983) 33 Cal.3d 778, 783-784 [191 Cal.Rptr. 8, 661 P.2d 1088] [condemning filing of pre-arbitration lawsuit in order to obtain pleadings that would reveal opponent's legal strategy].) Such a waste of arbitral and judicial time and resources should not be permitted.

---

[13]*Ericksen*, *supra*, 35 Cal.3d 312, does not compel a different result. In that case, we held that when one party to an arbitration agreement claimed fraud in the inducement of the contract, the entire controversy was nevertheless an arbitrable one, and the question of whether fraud existed was properly determined by the arbitrator, and not by a court of law. Although fraud in the inducement could result in "revocation of the agreement" (§ 1281.2), we distinguished that case from those in which a party claimed illegality of the underlying agreement. (*Ericksen*, *supra*, at pp. 316-317, fn. 2.) Moreover, we reasoned that requiring a party claiming fraud in the inducement to submit the claim to arbitration was justified because, "The difference between a breach of contract and such fraudulent inducement turns upon determination of a party's state of mind at the time the contract was entered into, and we ought not close our eyes to the practical consequences of a rule which would allow a party to avoid an arbitration commitment by relying upon that distinction." (*Id.* at pp. 322-323.)

■ We thus hold that unless a party is claiming (i) the entire contract is illegal, or (ii) the arbitration agreement itself is illegal, he or she need not raise the illegality question prior to participating in the arbitration process, so long as the issue is raised before the arbitrator. Failure to raise the claim before the arbitrator, however, waives the claim for any future judicial review. Because Moncharsh raised the illegality issue before the arbitrator, the issue was thus properly preserved for our review.

### b. *Judicial Review of Claims of Illegality*

■ Although Moncharsh acknowledges the general rule that an arbitrator's legal, as well as factual, determinations are final and not subject to judicial review, he argues that judicial review of the arbitrator's decision is warranted on the facts of this case. In support, he claims that the fee-splitting provision of the contract that was interpreted and enforced by the arbitrator was "illegal" and violative of "public policy" as reflected in several provisions of the Rules of Professional Conduct. Such illegality, he claims, has been recognized as a ground for judicial review as stated in a line of cases emanating from this court's decision in *Loving & Evans* v. *Blick* (1949) 33 Cal.2d 603 [204 P.2d 23] [hereafter *Loving & Evans*].

*Loving & Evans, supra,* 33 Cal.2d 603, involved a dispute about money due on a construction contract for remodeling done on appellant Blick's premises. In his pleading before the arbitrator, Blick claimed as a "separate and special defense" that respondent contractors could not legally recover because they were unlicensed in violation of the Business and Professions Code. The arbitrator found in respondents' favor, and they moved to confirm the award. Blick objected to the award on grounds that one of the respondents was unlicensed in violation of the code. The trial court granted the motion to confirm, but that judgment was reversed by this court. Although we recognized the general rule that the merits of a dispute before an arbitrator are not subject to judicial review, "the rules which give finality to the arbitrator's determination of ordinary questions of fact or of law are inapplicable *where the issue of illegality of the entire transaction* is raised in a proceeding for the enforcement of the arbitrator's award." (*Id.* at p. 609, italics added.)

The Court of Appeal reached a similar result in *All Points Traders, Inc.* v. Barrington Associates (1989) 211 Cal.App.3d 723 [259 Cal.Rptr. 780] [hereafter *All Points Traders*]. In that case, Barrington Associates (hereafter Barrington), an investment banking firm, sought payment of a commission for its assistance in negotiating the transfer of all the corporate stock of appellant All Points Traders. The arbitrator found in Barrington's favor and

the trial court confirmed the award. Nevertheless, the Court of Appeal reversed, finding the commission agreement between the parties was invalid and unenforceable in its entirety because Barrington did not hold a real estate broker's license as required by Business and Professions Code section 10130 et seq. The appellate court reasoned that "[t]he Legislature selected the specific means to protect the public and has expressed its intention in section 10136 [prohibiting an unlicensed broker from bringing an action to collect a commission]," and that "[e]nforcement of *the contract* for a commission would be in direct contravention of the statute and against public policy." (*All Points Traders, supra,* at p. 738 [italics added].)

Both *Loving & Evans, supra,* 33 Cal.2d 603, and *All Points Traders, supra,* 211 Cal.App.3d 723, permitted judicial review of an arbitrator's ruling where a party claimed the entire contract or transaction was illegal. By contrast, Moncharsh challenges but a single provision of the overall employment contract. Accordingly, neither *Loving & Evans, supra,* nor *All Points Traders, supra,* authorizes judicial review of his claim.[14]

We recognize that there may be some limited and exceptional circumstances justifying judicial review of an arbitrator's decision when a party claims illegality affects only a portion of the underlying contract. Such cases would include those in which granting finality to an arbitrator's decision would be inconsistent with the protection of a party's statutory rights. (Accord *Shearson/American Express Inc.* v. *McMahon* (1987) 482 U.S. 220, 225-227 [96 L.Ed.2d 185, 192-194, 107 S.Ct. 2332] [federal statutory claims are arbitrable under the Federal Arbitration Act unless party opposing arbitration demonstrates "that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue"].)

Without an explicit legislative expression of public policy, however, courts should be reluctant to invalidate an arbitrator's award on this ground. The reason is clear: the Legislature has already expressed its strong support for private arbitration and the finality of arbitral awards in title 9 of the Code of Civil Procedure. (§ 1280 et seq.) Absent a clear expression of illegality or public policy undermining this strong presumption in favor of private arbitration, an arbitral award should ordinarily stand immune from judicial scrutiny.

Moncharsh contends, as he did before the arbitrator, that paragraph X-C is illegal and violates public policy because, inter alia, it violates former rules

---

[14]To the extent that *Webb* v. *West Side District Hospital* (1983) 144 Cal.App.3d 946 [193 Cal.Rptr. 80] suggests judicial review of an arbitrator's decision is routinely available where one party claims merely that a portion of a contract is illegal, we disapprove that suggestion.

2-107 [prohibiting unconscionable fees], 2-108 [prohibiting certain types of fee splitting arrangements], and 2-109 [prohibiting agreements restricting an attorney's right to practice], of the Rules of Professional Conduct of State Bar.[15] We perceive, however, nothing in the Rules of Professional Conduct at issue in this case that suggests resolution by an arbitrator of what is essentially an ordinary fee dispute would be inappropriate or would improperly protect the public interest. Accordingly, judicial review of the arbitrator's decision is unavailable.

## CONCLUSION

We conclude that an award reached by an arbitrator pursuant to a contractual agreement to arbitrate is not subject to judicial review except on the grounds set forth in sections 1286.2 (to vacate) and 1286.6 (for correction). Further, the existence of an error of law apparent on the face of the award that causes substantial injustice does not provide grounds for judicial review.

Finally, the normal rule of limited judicial review may not be avoided by a claim that a provision of the contract, construed or applied by the arbitrator, is "illegal," except in rare cases when according finality to the arbitrator's decision would be incompatible with the protection of a statutory right. We conclude that Moncharsh has demonstrated no reason why the strong presumption in favor of the finality of the arbitral award should not apply here.

The judgment of the Court of Appeal is affirmed.

Panelli, J., Arabian, J., Baxter, J., and George, J., concurred.

**KENNARD, J.,** Concurring and Dissenting.—The majority holds that when a trial court is presented with an arbitration award that is erroneous on its face and will cause substantial injustice, the court has no choice but to confirm it. (Maj. opn., *ante*, at pp. 6, 33.) Because an order confirming an arbitration award results in the entry of a judgment with the same force and effect as a judgment in a civil action (Code Civ. Proc., § 1287.4), the majority's holding requires our trial courts not only to tolerate substantial injustice, but to become its active agent.

I cannot join the majority opinion. I will not agree to a decision inflicting upon this state's trial courts a duty to promote injustice by confirming arbitration awards they know to be manifestly wrong and substantially

[15]Rules of Professional Conduct former rules 2-107, 2-108, and 2-109, were recodified in substantially the same form in new rules 4-200, 2-200, and 1-500, respectively.

unjust. Nor can I accept the proposition, necessarily implied although never directly stated in the majority opinion, that the general policy in favor of arbitration is more important than the judiciary's solemn obligation to do justice.

Nothing in this state's statutory or decisional law compels the rule the majority announces. On the contrary, the majority has misperceived legislative intent, misconstrued the relevant statute, and misunderstood the decisional law establishing the scope of review for arbitration decisions. Worst of all, the majority has forsaken the goal that has defined and legitimized the judiciary's role in society—to strive always for justice.

## I

The object of government is justice. "Justice is the end of government. It is the end of civil society. It ever has been, and ever will be pursued, until it be obtained, or until liberty be lost in the pursuit." (James Madison, *The Federalist*, No. 51.) As the preamble to the United States Constitution affirms, our country was founded to "establish justice."

Justice is a special obligation of the judiciary. Every court has the power and the duty to "amend and control its process and orders so as to make them conform to law and justice." (Code Civ. Proc., § 128, subd. (a)(8).) When they construe statutes, courts are enjoined to do so in a way that will promote justice. (E.g., Civ. Code, § 4; Code Civ. Proc., § 4; Ed. Code, § 2; Pen. Code, § 4.) And, because the very purpose of our legal system is to do justice between the parties (*Sand* v. *Concrete Service Co.* (1959) 176 Cal.App.2d 169, 172 [1 Cal.Rptr. 257]), the interests of justice are paramount in all legal proceedings (*Travis* v. *Southern Pacific Co.* (1962) 210 Cal.App.2d 410, 425 [26 Cal.Rptr. 700]). In short, justice is the "sole justification of our law and courts." (Gitelson & Gitelson, *A Trial Judge's Credo Must Include His Affirmative Duty to be an Instrumentality of Justice* (1966) 7 Santa Clara Law. 7, 8.)

The majority never mentions the judiciary's paramount obligation to do justice, and the rule it announces—which requires trial courts to endorse decisions known to be substantially unjust—is its very antithesis. By filling its discussion with references to the expectations of the parties, the development of decisional law over the course of a century, and legislative intent as evidenced in our statute, the majority implies both that these considerations support its holding and that they are more important than doing justice.

The majority is wrong on both counts. For the judiciary, nothing can be more important than justice. This proposition is so self-evident that no

further elaboration is necessary. Moreover, as we shall see, respect for parties' freedom to contract, the development of decisional law, the relevant statute, and ascertainable legislative intent belie rather than support the majority's holding.

## II

As a method of dispute resolution, arbitration is generally faster and cheaper than judicial proceedings, but it has fewer safeguards against error. For this reason, parties who agree to binding arbitration must be deemed to have accepted the increased risk of error inherent in their chosen system. The majority takes this proposition, unobjectionable in itself, and from it jumps to the conclusion that parties who agree to arbitration thereby agree also to be bound by an award that on its face is manifestly erroneous and results in substantial injustice. But the conclusion defies both logic and experience. Reasonable contracting parties would never assume a risk that is so unnecessary and self-destructive.

The majority goes astray when it equates substantial injustice with a mere mistake. The two are not the same. Mistakes commonly occur in the course of dispute resolution proceedings without producing substantial injustice. As our state Constitution recognizes, determining whether a mistake has been made, and determining whether an injustice has occurred, are separate and distinct inquiries. (Cal. Const., art. VI, § 13 [court cannot set aside a judgment for error unless the error resulted in a miscarriage of justice].)

Parties who agree to resolve their disputes by arbitration should not and do not expect busy trial courts to comb the records of arbitration proceedings to determine whether any error has occurred and, if so, the effect of the error. But they no doubt do expect, and ought to be able to expect, that if the award on its face is erroneous and results in substantial injustice, a court asked to confirm the award will not turn a blind eye to the consequences of its action, but will instead take the only course consistent with its fundamental mandate, and will vacate the award.

Moreover, even if the parties were to do what is virtually inconceivable by expressly agreeing that the arbitrator's award would be binding even if substantially unjust, the agreement would not bind the judiciary. The exercise of judicial power cannot be controlled or compelled by private agreement or stipulation. (See *California State Auto. Assn. Inter-Ins. Bureau* v. *Superior Court* (1990) 50 Cal.3d 658, 664 [268 Cal.Rptr. 284, 788 P.2d 1156]; *Clarendon Ltd.* v. *Nu-West Industries, Inc.* (3d Cir. 1991) 936 F.2d 127, 129 ["action by the court can be neither purchased nor parleyed by the

parties"].) As the United States Supreme Court has remarked, a court should refuse to be "the abettor of iniquity." (*Precision Co.* v. *Automotive Co.* (1945) 324 U.S. 806, 814 [89 L.Ed. 1381, 1386, 65 S.Ct. 993].)

## III

To support its holding radically curtailing judicial review of arbitration awards, the majority surveys the decisional law of California since 1850. Undeterred by the plain language of the decisions, which is almost uniformly contrary to the majority's holding, the majority attempts to penetrate the surface of the opinions in order to trace the ebb and flow of more than a century's dark currents of judicial thought. Thus, the majority relies on what it terms "subtle shifts" in the decisions, "transmogrification" of principles, and citations in one opinion that on "close scrutiny" are alleged to be at odds with a clear statement of law in the opinion's text. (Maj. opn., *ante*, at pp. 17-18, 18-19, 19.) As an exercise in divination or telepathy, the majority's discussion is fascinating. But as sober legal analysis, the majority's discussion is simply wrong. From the outset, this court has consistently—until now—acknowledged that courts should refuse to permit use of the judiciary's awesome coercive power to perpetrate a substantial injustice.

In the first decision cited by the majority, *Muldrow* v. *Norris* (1852) 2 Cal. 74, this court held that it would not enforce an erroneous arbitration award when the error was on a "palpable and material point." (*Id.* at p. 77.) Although this court used a verbal formulation—"palpable and material point"—different from the term "substantial injustice" that became the standard expression in later cases (e.g., *Utah Const. Co.* v. *Western Pac. Ry. Co.* (1916) 174 Cal. 156, 160-161 [162 P. 631]), the concept is the same. To be on a "palpable and material point," an error must be of real importance or great consequence (Webster's Ninth New Collegiate Dict. (1988) p. 733), or, in other words, an error that causes substantial injustice.

Other early decisions used the term "gross error" to describe the very same ground for vacating an arbitration award. (E.g., *Headley* v. *Reed* (1852) 2 Cal. 322, 325; *In re Connor* (1900) 128 Cal. 279, 282 [60 P. 862].) An error is "gross" if it is glaringly noticeable "because of inexcusable badness or objectionableness." (Webster's Ninth New Collegiate Dict., *supra*, p. 538.) Thus, the term "gross error," like the "palpable and material point" formulation, represents an early articulation of what has subsequently become known as error causing substantial injustice.

Fairly read, the decisions of this court, although varying semantically, uniformly and firmly support the proposition that the judiciary will not

knowingly perpetuate and enforce an arbitration award that is substantially unjust. This court has adopted the same standard for determining when a court should decline to follow the rule known as law of the case. (See *People v. Shuey* (1975) 13 Cal.3d 835, 846 [120 Cal.Rptr. 83, 533 P.2d 211] ["a manifest misapplication of existing principles resulting in substantial injustice"]; accord, *George Arakelian Farms, Inc. v. Agricultural Labor Relations Bd.* (1989) 49 Cal.3d 1279, 1291 [265 Cal.Rptr. 162, 783 P.2d 749].)

The Courts of Appeal have correctly interpreted our decisions. In case after case, they have reaffirmed the rule that a court will vacate an arbitration award when error appears on the face of the award and causes substantial injustice. (E.g., *Cobler v. Stanley, Barber, Southard, Brown & Associates* (1990) 217 Cal.App.3d 518, 526 [265 Cal.Rptr. 868]; *All Points Traders, Inc. v. Barrington Associates* (1989) 211 Cal.App.3d 723, 736 [259 Cal.Rptr. 780]; *National Football League Players' Assn. v. National Football League Management Council* (1986) 188 Cal.App.3d 192, 199 [233 Cal.Rptr. 147]; *Ray Wilson Co. v. Anaheim Memorial Hospital Assn.* (1985) 166 Cal.App.3d 1081, 1090 [213 Cal.Rptr. 62]; *Abbott v. California State Auto. Assn.* (1977) 68 Cal.App.3d 763, 771 [137 Cal.Rptr. 580]; *Campbell v. Farmers Ins. Exch.* (1968) 260 Cal.App.2d 105, 112 [67 Cal.Rptr. 175].)

Searching for some departure from this prominent line of authority, the majority relies heavily on the Court of Appeal decision in *Crofoot v. Blair Holdings Corp.* (1953) 119 Cal.App.2d 156 [260 P.2d 156] (disapproved on another ground in *Posner v. Grunwald-Marx, Inc.* (1961) 56 Cal.2d 169, 183 [14 Cal.Rptr. 297, 363 P.2d 313]), but its reliance is misplaced. *Crofoot* cites this court's opinion in *Pacific Vegetable Oil Corp. v. C.S.T., Ltd.* (1946) 29 Cal.2d 228 [174 P.2d 441] for the proposition that courts had recently narrowed somewhat the judicial review of arbitration awards for legal error. (*Crofoot, supra,* at p. 185.) But neither *Crofoot* nor *Pacific Vegetable* suggests that review had become so narrow that courts were obliged to confirm awards containing obvious error causing substantial injustice. Indeed, *Pacific Vegetable* affirms that courts review arbitration awards to prevent " 'misuse of the proceeding, where corruption, fraud, misconduct, *gross error,* or mistake has been carried into the award to the *substantial prejudice* of a party to the proceeding.' " (*Pacific Vegetable, supra,* at p. 240, quoting *Utah Const. Co. v. Western Pac. Ry. Co., supra,* 174 Cal.156, 159, italics added.) Thus, legal error is a proper basis on which to challenge an arbitration award, provided that "the error appears on its face and causes substantial injustice." (*Utah Const. Co. v. Western Pac. Ry. Co., supra,* at p. 161.)

As the majority notes, the *Crofoot* opinion does state that the merits of an arbitration award may not be judicially reviewed except as provided in the

statute. (*Crofoot* v. *Blair Holdings Corp., supra,* 119 Cal.App.2d 156, 186.) Because the relevant statute, Code of Civil Procedure section 1286.2, does not say in so many words that an arbitration award may be challenged for obvious error causing substantial injustice, the majority concludes that a court may not vacate an award on this ground. But this conclusion is wrong. Our statute does not, by negative implication or otherwise, mandate injustice.

## IV

Code of Civil Procedure section 1286.2 lists five grounds for vacating an arbitration award. This statutory list is reproduced in the margin.[1] Although the statute states only that a court "shall vacate the award" if any of these grounds is present, the majority construes the statute as precluding a court from vacating an arbitration award on any ground not specifically defined in the statute. In thus construing the statutory list, the majority ignores the statute's legislative history.

Code of Civil Procedure section 1286.2 is essentially unchanged from its 1927 predecessor (Stats. 1927, ch. 225, § 9, p. 406), and materially the same as the original provision enacted in 1851 (Stats. 1851, second sess., tit. X, ch. IV, § 386, pp. 112-113). (See maj. opn., *ante,* at pp. 12, 16, 20-21.) The Legislature enacted section 1286.2 in its present form in 1961 (Stats. 1961, ch. 461, § 2, p. 1540) following a recommendation and study of the California Law Revision Commission. (Recommendation and Study Relating to Arbitration (Dec. 1960) 3 Cal. Law Revision Com. Rep. (1961), p. G-1 et seq.) In its report to the Legislature, the commission separately and expressly addressed the subject of judicial review of arbitration awards. Because the commission accurately stated California law on this subject, and because its statement belies the majority's reading of the statute, the commission's comment is worth quoting in some detail:

*"Nothing in the California statute defines the permissible scope of review by the courts.* Numerous court rulings have, however, developed the following basic principles which set the limits for any court review: . . . [¶] (5) Statutory provisions for a review of arbitration proceedings are for the sole

---

[1] "(a) The award was procured by corruption, fraud or other undue means; [¶] (b) There was corruption in any of the arbitrators; [¶] (c) The rights of such party were substantially prejudiced by misconduct of a neutral arbitrator; [¶] (d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; or [¶] (e) The rights of such party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title."

purpose of preventing misuse of the proceedings where corruption, fraud, misconduct, gross error or mistake has been carried into the award to the substantial prejudice of a party to the proceedings. . . . [¶] Neither the Uniform Arbitration Act nor other state statutes attempt to express the exact limits of court review of arbitration awards. And no good reason exists to codify into the California statute the case law as it presently exists." (Recommendation and Study Relating to Arbitration, *supra*, 3 Cal. Law Revision Com. Rep., pp. G-53-G-54, fns. omitted, italics added.)

The commission, in other words, did not intend to either alter or codify the judicially established grounds for challenging an arbitration award. Contrary to the majority's view, Code of Civil Procedure section 1286.2 was never meant to define the "permissible scope of review by the courts" or to "express the exact limits of court review of arbitration awards." Thus, the statute does not preclude a court from vacating an arbitration award on a ground well established by decisional law.

In words that closely track the language this court used in *Pacific Vegetable Oil Corp.* v. *C.S.T., Ltd.*, *supra*, 29 Cal.2d 228, 240, the commission acknowledged that one purpose of judicial review is to prevent gross errors or mistakes from being carried into an award to the substantial prejudice of a party, that is, substantial injustice. (Recommendation and Study Relating to Arbitration, *supra*, 3 Cal. Law Revision Com. Rep. (1961), p. G-55.) Code of Civil Procedure section 1286.2 may not be read as barring a court from vacating an arbitration award when these conditions are present.

The majority attempts to evade the obvious import of the commission's statement by referring to language in another part of the report that "[e]ven a gross error or mistake in an arbitrator's judgment is not sufficient grounds for vacation unless the error amounts to actual or constructive fraud." (Maj. opn., *ante*, at p. 25, fn. 10.) But this statement is not in the portion of the commission's report setting forth the basic principles governing judicial review. Moreover, it is derived from a federal district court case expressly recognizing that "Gross error or mistake prejudicing substantially the rights of a party" is a ground for vacating an arbitration award under California law. (*Lundblade* v. *Continential Ins. Co.* (N.D.Cal. 1947) 74 F.Supp. 795, 797.) Finally, the word "fraud" as used in the commission's statement includes a mistake that prevents the fair exercise of judgment (*California Sugar Etc. Agency* v. *Penoyar* (1914) 167 Cal. 274, 279 [139 P. 671]), and thus includes gross errors or mistakes that result in substantial injustice.

Even if one were to conclude, contrary to the report of the Law Revision Commission, that Code of Civil Procedure section 1286.2 defines the permissible scope of review by the courts, it still would not follow that a court

cannot vacate an award for error appearing on the award's face and resulting in substantial injustice. Under the statute, a court must vacate an award if it determines that "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (Code Civ. Proc., § 1286.2, subd. (d).) As the Courts of Appeal have recognized time and again, arbitrators exceed their statutory powers when they make an award that is erroneous on its face and results in substantial injustice. (E.g., *Cobler* v. *Stanley, Barber, Southard, Brown & Associates, supra,* 217 Cal.App.3d 518, 526; *All Points Traders, Inc.* v. *Barrington Associates, supra,* 211 Cal.App.3d 723, 736; *Greenfield* v. *Mosley* (1988) 201 Cal.App.3d 735, 744-745 [247 Cal.Rptr. 314]; *Ray Wilson Co.* v. *Anaheim Memorial Hospital Assn., supra,* 166 Cal.App.3d 1081, 1090; *Abbott* v. *California State Auto. Assn., supra,* 68 Cal.App.3d 763, 771; see also *Times Mirror Co.* v. *Superior Court* (1991) 53 Cal.3d 1325, 1333 [283 Cal.Rptr. 893, 813 P.2d 240] [excess of jurisdiction not confined to subject-matter jurisdiction, but includes acts in excess of authority as defined in the Constitution, statutes, or judicial decisions]; *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715] [same].)

V

Despite my disagreement with the reasoning of the majority opinion, I agree with the result it reaches. This is not a case in which error appearing on the face of an arbitration award would cause a substantial injustice.

The agreement was negotiated between sophisticated parties; the disparity in bargaining power between the parties was not substantial; there is no indication of harm to the clients or other third parties; and there is no basis in the arbitrator's award for finding that the fees were wholly disproportionate to the services rendered. Therefore, the award was not substantially unjust.

CONCLUSION

Although I concur in the result, I cannot join the majority to support judicially sanctioned and enforced substantial injustice. The majority's holding· violates the most basic obligation of the judiciary, and is inconsistent with both our well-established decisional law and our statute.

Mosk, J., concurred.

Appellant's petition for a rehearing was denied September 24, 1992. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.