[No. F060838. Fifth Dist. Aug. 16, 2011.]

TEMPLO CALVARIO SPANISH ASSEMBLY OF GOD, Plaintiff and Appellant, v.
GARDNER CONSTRUCTION CORPORATION et al., Defendants and Respondents.

**COUNSEL**

LeBeau-Thelen and Kevin E. Thelen for Plaintiff and Appellant.

Dean Gardner, in pro. per., for Defendants and Respondents.

**OPINION**

**FRANSON, J.—**

## INTRODUCTION

Appellant Templo Calvario Spanish Assembly of God (Templo) and respondent Gardner Construction Corporation (Gardner) entered into a contract in 2008 for Gardner to construct a church. The parties had a dispute,

Templo petitioned for arbitration, but before the petition was ruled upon, the parties agreed to submit the matter to arbitration under the terms of an arbitration provision in the contract. Because Gardner was unlicensed, the arbitrator ruled that Gardner must disgorge the entire $160,213 Templo had paid to Gardner. Templo petitioned the superior court to confirm the arbitration award. Gardner followed with a petition to vacate the arbitration award. Based on the 1949 California Supreme Court holding in *Loving & Evans v. Blick* (1949) 33 Cal.2d 603 [204 P.2d 23] (*Loving & Evans*), the court granted Gardner's petition to vacate the award. The superior court ruled: "[T]he . . . contract was illegal and void because Gardner Corporation was an unlicensed contractor. . . . Since the contract is illegal and void, so is the arbitration provision in the contract. Since the arbitration provision fails, the arbitrator was without authority to render a decision." (Some capitalization omitted.)

On this appeal, Templo contends the superior court's order vacating the arbitration award was erroneous because under the 2005 California Supreme Court case of *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412 [30 Cal.Rptr.3d 755, 115 P.3d 41] (*MW Erectors*), the contract was not automatically illegal and void, and the arbitrator had the authority to render a decision. As we shall explain, we agree with appellant Templo and reverse the superior court's order vacating the arbitration award.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Arbitrator's Award*

The arbitrator's findings included the following:

### "Contract and Amendment

"1. Templo entered into a written Commercial Construction Contract ('Contract') with Gardner Construction Corporation . . . , which included an arbitration provision. The Contract is dated June 1, 2008. The Contract was executed by Dean Gardner, as President of Gardner Construction Corporation, with a handwritten date of July 2, 2008. Templo executed the Contract through Dr. Rogelio Ovalle, Pastor of Templo, with a handwritten date of July 2, 2008.

"2. The parties, namely Templo and Gardner Construction Corporation, also executed an Amendment, dated June 1, 2008, but bearing the handwritten date of July 2, 2008 . . . . The subject of the Contract and Amendment is construction of a building for Templo by Gardner Construction Corporation. . . . [¶] . . . [¶]

"6. . . . The Arbitrator expressly finds that the Contract and Amendment are in fact the operative agreements and reflect that the party serving as the general contractor under the Contract and Amendment was Gardner Construction Corporation. . . .

"**Payment**

"7. Templo made two separate payments following execution of the Contract and Amendment. Templo issued a check to Gardner Construction dated July 20, 2008, in the sum of $43,000 . . . . Templo issued a second payment to Gardner Construction dated August 15, 2008 in the sum of $117,213 . . . . The Arbitrator finds that the total amount advanced by Templo to Gardner Construction was the sum of $160,213. [¶] . . . [¶]

"**Licensure**

"11. Dean Gardner testified that Gardner Construction Corporation is not licensed as a contractor. . . . The Arbitrator finds that while the Contract and Amendment were between Templo and Gardner Construction Corporation, Gardner Construction Corporation is not currently a licensed contractor, it was not a licensed contractor at the time the Contract and Amendment were executed, nor was it licensed at any time during the Templo project.

"12. California Business [and] Professions Code section 7031, subdivision (a), expressly precludes a person from collecting compensation for construction work unless (1) the person was 'a duly licensed contractor at all times during the performance of [the construction work],' . . . .

"13. If a corporation without a contractor[']s license enters into a construction contract and agrees to conduct construction work, the [Business and Professions Code] [s]ection 7031 litigation bar precludes the unlicensed corporation from collecting compensation for construction work. . . . [¶] . . . [¶]

"15. The evidence and documents also establish that Dean Gardner expended considerable time and effort on the project for Templo. The Arbitrator finds that Mr. Gardner's efforts prior to execution of the Contract and Amendment were directly and unequivocally related to construction work that was the subject of the Contract and Amendment and were expended in anticipation of a formal agreement, which was in fact executed (along with the Amendment) on or about July 2, 2008.

"16. The Arbitrator finds that Mr. Gardner is not entitled to recover any sums for his efforts based upon a quantum meruit theory or any other common count type of claim. (See *MW Erectors, supra,* 36 Cal.4th at [p.] 428.)

"**Disgorgement**

"17. Templo demands in its Arbitration Brief that Gardner Construction Corporation return the sum of $146,481 to Templo.

"18. Notwithstanding the substantial compliance exceptions under Business [and] Profession[s] Code section 7031, subdivisions (a) or (e), 'a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract.' (Bus. & Prof. Code, § 7031, subd. (b).)

"19. The Arbitrator finds that Templo is entitled to disgorgement of all sums paid pursuant to the Contract and Amendment."

### B. *Superior Court Ruling*

Templo petitioned the superior court for confirmation of the arbitration award. Gardner then petitioned the court to vacate the award. Gardner's petition to vacate the award challenged the arbitrator's award on many grounds, including that the arbitrator had exceeded his powers because the arbitrator had ruled on many issues that had not been submitted by the parties for determination. However, no allegation was made that the construction contract or the arbitration provision was illegal or void.

Nevertheless, at the hearing on the petitions the superior court announced, "I'm kind of going in a different direction than was presented just based on some research that I've done." The court suggested that perhaps the arbitrator had been without authority to arbitrate the dispute on the theory that a contract entered into by an unlicensed contractor "was illegal" and therefore the arbitration clause in it was not valid and the arbitrator had no authority to arbitrate. The court asked the parties to submit supplemental briefing addressing the case of *Loving & Evans, supra*, 33 Cal.2d 603, which the court viewed as supporting its theory.

The parties did so. The court then entertained argument at a second hearing. The court took the matter under submission and later issued its ruling, which stated in pertinent part:

"The court finds that the June 1, 2008 contract was illegal and void because Gardner Corporation was an unlicensed contractor. Business and

Professions Code [section] 7028[, subdivision] (a) ('It is a misdemeanor for a person to engage in the business or act in the capacity of a contractor within this state without having a license therefore, unless the person is particularly exempted from the provisions of this chapter.'); *Gatti v. Highland Park Builders, Inc.* (1946) 27 Cal.2[d] 687, 689 [166 P.2d 265] ('A contract made contrary to the terms of a law designed for the protection of the public and prescribing a penalty for the violation thereof is illegal and void, and no action may be brought to enforce such contract'). Since the contract is illegal and void, so is the arbitration provision in the contract. Since the arbitration provision fails, the arbitrator was without authority to render a decision. [*Loving & Evans, supra,*] 33 Cal.2[d] [at p.] 610 . . . .

"The court recognizes that here, unlike in *Loving & Evans* it is the innocent party (Templo) who prevailed at the arbitration and seeks confirmation of the arbitrator's award. Notwithstanding this distinction, the court finds the rationale of *Loving & Evans* applicable to the facts of this case. If the contract is illegal and void, it is so regardless of which party seeks to benefit. The court finds [*MW Erectors, supra,*] 36 Cal.4th 412, upon which Templo relies, unpersuasive.

"The court denies the petition to confirm the arbitrator's award, without prejudice to Templo's rights pursuant to Business [and] Professions Code [section] 7031 to seek judicial relief to recover all compensation paid to the unlicensed contractor. The court grants the petition to vacate the arbitrator's award on the grounds the arbitrator exceeded his authority. [Code of Civil Procedure sections] 1286.4[, subdivision] (a)[,] 1286.2[, subdivision] (a)(4); [*Loving & Evans, supra,* 33 Cal.2d 603]; *Jones v. Humanscale Corp.* [(2005) 130 Cal.App.4th 401 [29 Cal.Rptr.3d 881]]; and, *California State Council of Carpenters v. Superior Court* [(1970) 11 Cal.App.3d 144 [89 Cal.Rptr. 625]]." (Some capitalization & underscoring omitted, italics added.)

## DISCUSSION

As we shall explain, the superior court erred in vacating the arbitration award because "the [Contractors' State License Law (CSLL)] does not automatically void all contracts entered by unlicensed contractors." (*MW Erectors, supra,* 36 Cal.4th at p. 440.)

### A. *Arbitration Generally*

"Title 9 of the Code of Civil Procedure, as enacted and periodically amended by the Legislature, represents a comprehensive statutory scheme regulating private arbitration in this state. ([Code Civ. Proc.,] § 1280 et seq.) Through this detailed statutory scheme, the Legislature has expressed a

'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' [Citations.] Consequently, courts will ' "indulge every intendment to give effect to such proceedings." ' [Citation.]" (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*).)

██ "This expectation of finality strongly informs the parties' choice of an arbitral forum over a judicial one. The arbitrator's decision should be the end, not the beginning, of the dispute." (*Moncharsh, supra,* 3 Cal.4th at p. 10.) "Ensuring arbitral finality thus requires that judicial intervention in the arbitration process be minimized. [Citations.] Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration. Thus, an arbitration decision is final and conclusive *because the parties have agreed that it be so.* By ensuring that an arbitrator's decision is final and binding, courts simply assure that the parties receive the benefit of their bargain." (*Ibid.,* fn. omitted.)

██ "Thus, both because it vindicates the intentions of the parties that the award be final, and because an arbitrator is not ordinarily constrained to decide according to the rule of law, it is the general rule that, 'The merits of the controversy between the parties are not subject to judicial review.' [Citations.]" (*Moncharsh, supra,* 3 Cal.4th at p. 11.) "Thus, it is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law. In reaffirming this general rule, we recognize there is a risk that the arbitrator will make a mistake. That risk, however, is acceptable for two reasons. First, by voluntarily submitting to arbitration, the parties have agreed to bear that risk in return for a quick, inexpensive, and conclusive resolution to their dispute. . . . [¶] . . . [¶] A second reason why we tolerate the risk of an erroneous decision is because the Legislature has reduced the risk to the parties of such a decision by providing for judicial review in circumstances involving serious problems with the award itself, or with the fairness of the arbitration process." (*Id.* at pp. 11–12.)

B.   *The Contract Was Not Automatically Void*

██ Under *MW Erectors,* the superior court's conclusion that there was no agreement to arbitrate because the entire contract containing the arbitration clause was illegal and void was incorrect. *MW Erectors* was a nonarbitration action, where one subcontractor, MW Erectors (essentially the contractor), brought a civil action against another subcontractor, Niederhauser (essentially the consumer). MW Erectors was not licensed when the contract was signed, but was later licensed during the entire performance of the contract. The court

recognized and emphasized the distinction between an unlicensed contractor *entering* into a contract and the same contractor, now licensed, *performing* under the contract. In that situation, the court stated:

"[A]llowing suit and recovery under such circumstances violates no express term of [Business and Professions Code] section 7031[, subdivision] (a). That statute prohibits a contractor from suing 'for the collection of *compensation for the performance* of any act or contract where a license is required . . . without alleging that he or she was a duly licensed contractor at all times during the *performance* of that act or contract.' (*Ibid.*, italics added.) The 'act' of *executing* an agreement is not one for which a contractor seeks compensation; rather, he or she pursues payment for *carrying out* the contract in a satisfactory manner. (See *Vitek, Inc. v. Alvarado Ice Palace, Inc.* (1973) 34 Cal.App.3d 586, 590 [110 Cal.Rptr. 86] (*Vitek*).) Hence, we conclude, the due licensure of which [Business and Professions Code] section 7031[, subdivision] (a) speaks is due licensure while the contract itself is being performed." (*MW Erectors, supra,* 36 Cal.4th at p. 435.)

"We now confirm that the CSLL does not automatically void all contracts entered by unlicensed contractors. . . . It . . . expressly bars suits to collect compensation for *unlicensed work* ([Bus. & Prof. Code,] § 7031[, subd.] (a)), but does not extend the bar to persons who, though they performed *while licensed,* were unlicensed when they *agreed* to perform the work. This detailed and comprehensive enforcement scheme thus excludes by implication such an additional penalty.

"Indeed, the Legislature has demonstrated, elsewhere in the CSLL, that it knows how to invalidate the agreements of unlicensed contractors when it wishes to do so. [Business and Professions Code] [s]ection 7028.15, subdivision (e), as amended in 1990 (Stats. 1990, ch. 321, § 1, p. 1605), expressly provides that '[a]ny contract awarded [by a *public agency*] . . . to[] a contractor who is not licensed pursuant to this chapter *is void.*' (Italics added.) As noted, no CSLL provision similarly treats an unlicensed contractor's agreement with a private person or entity.

■ "An agreement for contractor services has no wrongful object whose enforcement is forbidden by fundamental public policy (see Civ. Code, §§ 1595, 1596, 1598), merely because the contractor was unlicensed at the moment he or she executed it. Insofar as unlicensed execution of such a contract violates the CSLL's regulatory provisions, the statute provides specified civil and criminal sanctions for such conduct. . . . On the other hand, while the CSLL denies use of the courts to recover compensation for the unlicensed *performance* of contracting work, the statute nowhere extends that disability to a contractor's unlicensed agreement [or contract] with a

private entity. As [*Asdourian v. Araj* (1985)] 38 Cal.3d 276 [211 Cal.Rptr. 703, 696 P.2d 95], and *Vitek, supra,* 34 Cal.App.3d 586, make clear, courts will not, under such circumstances, extend the harsh sanction of forfeiture beyond the bounds set by the Legislature absent a showing that such a result is essential to effectuate the statute's protective purposes.

"We see no such necessity here. As indicated, the CSLL expressly provides multiple means of enforcing the general ban on acting as an unlicensed contractor, insofar as that prohibition includes the mere execution of contracting agreements while unlicensed. *Though the Legislature barred recovery of compensation by unlicensed contractors under certain circumstances, it did not impose this bar against contractors who, though licensed at all times during performance of contracting work, had executed agreements for the work while unlicensed. No compelling reason exists to conclude that the public protective purposes of the CSLL can only be served by deeming such contracts illegal, void, and unenforceable on that basis alone.*" (*MW Erectors, supra,* 36 Cal.4th at pp. 440–441, fn. omitted, italics added.)

██ Therefore, entering into a contract with a contractor who is later shown to be unlicensed at the time of execution of the contract does not automatically render the contract void. If unlicensed at the time of performance, the CSLL (Contractors' State License Law; Bus. & Prof. Code, § 7000 et seq.) prohibits the contractor from filing suit to collect compensation for the performance of unlicensed work.

Like *MW Erectors,* we see no compelling need to conclude the CSLL mandates that a consumer, Templo, cannot proceed to arbitrate its dispute with Gardner simply because the contractor was unlicensed at the time of signing the construction contract. Business and Professions Code section 7031, subdivision (b) authorizes Templo to bring an action to recover monies paid to an unlicensed contractor. Public policy favoring arbitration of this type of dispute supports this conclusion. (See pt. A. of the Discussion, above.) The CSLL and *MW Erectors* bar a contractor who is unlicensed during the performance of the contract, as was Gardner in this case, from bringing suit or using the courts to collect compensation of its work while unlicensed. This bar also applies to initiating any affirmative arbitration claim.

The superior court relied on *Loving & Evans,* which involved a contractor who was unlicensed during the entire relevant period, who petitioned for arbitration seeking compensation. The owner answered, and alleged the lack of a license as an affirmative defense. The arbitrator ignored the license issue and awarded the unlicensed contractor his fees. The superior court affirmed the award and judgment was entered. A closely divided Supreme Court reversed, stating " 'a contract made contrary to the terms of a law designed

for the protection of the public and prescribing a penalty for the violation thereof is illegal and void, and no action may be brought to enforce such contract' [citations] . . . ." (*Loving & Evans, supra,* 33 Cal.2d at p. 607.) "It seems clear that the power of the arbitrator to determine the rights of the parties is dependent upon the existence of a valid contract under which such rights might arise. [Citations.] In the absence of a valid contract no such rights can arise and no power can be conferred upon the arbitrator to determine such nonexistent rights." (*Id.* at p. 610.) If the issue of the invalidity of the contract is presented to a court on a petition to confirm and/or to vacate an arbitration award, "and it appears to the court from the uncontradicted evidence that the contract is illegal, . . . the court should deny confirmation and should vacate any award granting relief under the illegal contract upon the ground that the arbitrator exceeded his powers in making such award." (*Ibid.*) The Supreme Court reversed the superior court's order confirming the arbitration award, but stated that "[u]pon reversal, respondents may present to the trial court any matters which they may claim will show a substantial compliance with the licensing requirements so as to avoid the charge of illegality with respect to the contract in question." (*Id.* at p. 615.)

■ The superior court found *MW Erectors* unpersuasive. We do not. Although the Supreme Court in *MW Erectors* did not expressly say that it was overruling *Loving & Evans,* but instead described it as not a "modern case" (*MW Erectors, supra,* 36 Cal.4th at p. 436) and chose not to follow it, we conclude that its holding effectively did overrule *Loving & Evans* on the issue of whether a contract entered into by an unlicensed contractor is automatically " 'illegal and void.' " (*Loving & Evans, supra,* 33 Cal.2d at p. 607). *MW Erectors* addressed this issue directly and concluded that such a contract is not automatically void, even going so far as to say that "[a]n agreement for contractor services has no wrongful object whose enforcement is forbidden by fundamental public policy [citations], merely because the contractor was unlicensed at the time he or she executed it." (*MW Erectors, supra,* 36 Cal.4th at pp. 440–441.) The court in *MW Erectors* expressly noted that "any number of cases, including decisions of this court, have stated that the courts will not enforce an agreement for contractor services executed by a person who was not duly licensed to perform them" (*id.* at p. 436) and cited *Loving & Evans* as one of these cases (*MW Erectors, supra,* 36 Cal.4th at p. 436). The court then went on to examine the issue in detail, and concluded that such an agreement could and would be enforced if the contractor was licensed at all times when the contractor's services were actually performed, thereby rejecting the view that the contract was illegal and void at its inception. In the case presently before us, therefore, the contract likewise was not

illegal and void at its inception, and the arbitration clause was not part of an illegal or void contract.[1]

## DISPOSITION

The judgment is reversed. Because the superior court vacated the arbitration award on the basis of that court's erroneous conclusion that *Loving & Evans v. Blick, supra,* 33 Cal.3d 603, called for such a result, and does not appear to have considered the grounds raised by respondent in respondent's petition to vacate the arbitration award, we therefore remand the matter to the superior court for that court to address the grounds raised by respondent in respondent's petition to vacate the arbitration award, and to rule accordingly on said petition.

Costs on appeal are awarded to appellant.

Gomes, Acting P. J., and Kane, J., concurred.

A petition for a rehearing was denied September 13, 2011, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied November 22, 2011, S197311.

---

[1] Respondent has filed a "Renewed Motion to Augment Record on Appeal" asking us to augment the appellate record with various documents which were not filed or lodged with the superior court and which appear to have nothing to do with the issue of whether the arbitration clause was part of an illegal or void contract. We deny the request. (*People v. Gaston* (1978) 20 Cal.3d 476 [143 Cal.Rptr. 205, 573 P.2d 423].)