Filed 12/21/22; Certified for Publication 1/20/123 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| VASCOS EXCAVATION GROUP LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ROBERT GOLD,<br><br>    Defendant and Respondent. | B315205<br><br>(Los Angeles County<br>Super. Ct. No. 20STCV01372) |

APPEAL from an order of the Superior Court of Los Angeles County, Timothy P. Dillon, Judge.  Affirmed.

Law Office of Daniel M. O'Leary and Daniel M. O'Leary for Plaintiff and Appellant.

The Law Offices of Abdulaziz, Grossbart & Rudman and Bruce D. Rudman for Defendant and Respondent.

Plaintiff and appellant Vascos Excavation Group LLC (Vascos), a contractor, prevailed in an arbitration against its client, defendant and respondent Robert Gold. After finding that Vascos was not duly licensed because its responsible managing employee (RME) did not meet the criteria required by law, the trial court granted Gold's petition to vacate the arbitration award on the ground the arbitrator exceeded her powers.

Vascos makes two main arguments on appeal. It first contends the trial court misapplied the burden of proof regarding whether Vascos was a duly licensed contractor. We reject this argument. The trial court correctly determined that Vascos had the burden of proof on this issue.

Vascos also argues the trial court erroneously denied it an evidentiary hearing. In the trial court, however, Vascos did not seek an evidentiary hearing. It instead argued that such a hearing was not authorized by law. Vascos therefore forfeited the issue on appeal.

## BACKGROUND

In June 2019, Vascos and Gold executed a written agreement. Under the contract, in exchange for monetary compensation, Vascos was required to perform certain excavation, grading, and concrete work at Gold's property in Pacific Palisades. The contract included an arbitration clause.

A dispute arose between Vascos and Gold regarding the amount Gold owed under the contract. Vascos recorded a mechanics lien and then, in January 2020, filed a complaint in superior court against Gold to enforce the lien.

Gold did not file an answer to the complaint. Instead, he filed a petition to compel arbitration. Vascos responded by filing a notice of non-opposition to the petition and serving Gold with a

2

demand for arbitration with the American Arbitration Association (AAA) pursuant to AAA's Construction Industry Arbitration Rules and Mediation Procedures (Construction Arbitration Rules). The court then entered an order compelling the parties to arbitrate.

AAA advised counsel for both sides that it would apply the Construction Arbitration Rules and assigned the matter to arbitrator Marcia Haber Kamine. Gold corresponded with the arbitrator but did not file an answer to Vascos' demand for arbitration.

The arbitrator held a four-day hearing in October 2020. After both parties rested, Gold argued that Vascos was barred from seeking compensation because it was not a duly licensed contractor. The arbitrator re-opened the arbitration for the limited purpose of giving Vascos an opportunity to prove it had a valid license.

Vascos filed a certified copy of its license, showing its license was current and that John Matthew Welch was its RME. On the RME issue, Vascos filed a declaration by Victor Montes, the project manager at Gold's property. Montes attached a "snippet" of two videos that purportedly show Welch at the construction site on June 29 and August 10, 2020. These videos are not in the record.

In January 2021, the arbitrator issued an interim award, finding that Vascos was entitled to recover $111,440.29 in damages and penalties. In the interim award, the arbitrator found: "The evidence of Mr. Welch's participation was his attendance at the job site on at least one occasion, and that he worked remotely from his home in his capacity as RME. Working remotely would allow Mr. Welch to make administrative

decisions. For this reason, the challenge to his RME status is over ruled." The arbitrator issued a final award in February 2021, adopting the relevant portions of her interim award.

In March 2021, Gold filed a petition to vacate arbitration award in the superior court. Vascos opposed the petition and asked the court to confirm the arbitration award.

On July 28, 2021, the trial court entered an order granting Gold's petition to vacate the arbitration award.[1] The trial court found Vascos failed to meet its burden of proving that Welch was a bona fide RME and, consequently, failed to show that Vascos was a duly licensed contractor at the time it provided Gold with construction services.

Vascos timely appealed.

## DISCUSSION

### I. *The Trial Court Did Not Misapply the Burden of Proof*

#### A. *An Arbitration Award Issued Pursuant to an Unenforceable Contract May be Vacated*

The trial court compelled an arbitration in this case pursuant to an arbitration clause in the contract between the parties. The Legislature has enacted a comprehensive statutory scheme regulating arbitration in furtherance of a " 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' " (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 (*Moncharsh*).)

---

[1] The trial court also denied Vascos' request to "partially correct" the award to grant Vascos attorney fees. Vascos does not make any argument on appeal regarding this issue.

4

Generally, an arbitration award is final.  (See *Moncharsh*, *supra*, 3 Cal.4th at p. 9.)  "The scope of judicial review of arbitration awards is extremely narrow because of the strong public policy in favor of arbitration and according finality to arbitration awards."  (*Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 33 (*Ahdout*).)

A trial court may vacate an arbitration award only on certain, enumerated grounds.  (Code Civ. Proc., § 1286.2.)  One ground is that the arbitrator exceeded his or her powers.  (*Id.* at § 1286.2, subd. (a)(4).)  "[T]he power of the arbitrator to determine the rights of the parties is dependent upon the existence of a valid contract under which such rights might arise."  (*Loving & Evans v. Blick* (1949) 33 Cal.2d 603, 610 (*Loving & Evans*).)

In *Loving & Evans*, an unlicensed contractor prevailed in an arbitration against its client.  Our Supreme Court held the trial court erred in confirming the arbitration award because the underlying contract was illegal.  (*Loving & Evans*, *supra*, 33 Cal.2d at pp. 614–615.)  Since *Loving & Evans*, the courts have repeatedly upheld the rule that arbitration awards issued pursuant to illegal or unenforceable contracts must be vacated. (See, e.g., *All Points Traders, Inc. v. Barrington Associates* (1989) 211 Cal.App.3d 723, 738 [unlicensed real estate broker]; *Lindenstadt v. Staff Builders, Inc.* (1997) 55 Cal.App.4th 882, 893 (*Lindenstadt*) [unlicensed real estate broker]; *Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 917 ["judicial review may be warranted when a party claims that an arbitrator has enforced an entire contract or transaction that is illegal"]; *Sheppard, Mullin, Richter & Hampton, LLP v. J-M*

5

*Manufacturing Co.* (2018) 6 Cal.5th 59, 73–75 (*Sheppard Mullin*) [violation of attorney professional responsibility rules].)

While the California Supreme Court has "identified limits" to the *Loving & Evans* exception to arbitral finality, it has "not questioned the continued validity" of the exception. (*Sheppard Mullin, supra,* 6 Cal.5th at p. 75.) "[T]he basic premise of *Loving & Evans* is that an agreement to arbitrate is invalid and unenforceable if it is made as part of a contract that is invalid and unenforceable because it violates public policy." (*Sheppard Mullin,* at pp. 78–79.)

B.      *The Trial Court and This Court Review the Issue of Illegality/Unenforceability De Novo*

"Whether a contract is entirely illegal, and therefore unenforceable, is an issue 'for judicial determination upon the evidence presented to the trial court, and any preliminary determination of the legality by the arbitrator . . . should not be held to be binding upon the trial court.' " (*Sheppard Mullin, supra,* 6 Cal.5th 59 at pp. 74–75 [quoting *Loving & Evans*]; accord *Ahdout, supra,* 213 Cal.App.4th at p. 33.)

We review the trial court's decision regarding whether an arbitrator exceeded his or her powers de novo. (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 382; *Ahdout, supra,* 213 Cal.App.4th p. 33.)

C.      *The Requirements of the CSLL*

The purpose of the Contractors State License Law (CSLL; Bus. & Prof. Code, § 7000 et seq.)[2] is to protect the public from

_____

[2]      Unless otherwise stated, all future statutory references are to the Business and Professions Code.

6

incompetent and dishonest contractors who provide building and construction services. (*Manela v. Stone* (2021) 66 Cal.App.5th 90, 102; *Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 995 (*Hydrotech*).) To further that goal, the CSLL "imposes strict and harsh penalties for a contractor's failure to maintain proper licensure." (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 418 (*MW Erectors*).)

Under the CSLL, a contractor may not maintain any action, legal or equitable, to recover compensation for the "performance of any act or contract" unless the contractor was duly licensed "at all times during the performance of that act or contract." (§ 7031, subd. (a).)

A limited liability company (LLC) like Vascos may qualify for a license through the qualification of certain individuals affiliated with the company, including an RME. (§ 7068, subd. (b)(4).) If an RME is disassociated with an LLC, and is not replaced within 90 days of the disassociation date, the company's license is automatically suspended. (§ 7068.2, subd. (a); *Buzgheia v. Leasco Sierra Grove* (1997) 60 Cal.App.4th 374, 387 (*Buzgheia*).)

An RME must satisfy two basic requirements. The individual must be (1) a "bona fide employee" of the LLC and (2) "actively engaged" in the work for which the LLC has a license. (§ 7068, subd. (c)(1).) "Bona fide employee" of the LLC means an employee who is "permanently employed." (§ 7068, subd. (c)(2)(A).) " 'Actively engaged' means working 32 hours per week, or 80 percent of the total hours per week that the [LLC's] business is in operation, whichever is less." (§ 7068, subd. (c)(2)(B).)

7

An RME "shall be responsible for exercising supervision and control of their employer's or principal's construction operations to secure compliance" with the CSLL and related regulations. (§ 7068.1, subd. (a).)

### D.     *The Trial Court's Order Was Correct*

Section 7031, subdivision (d) provides: "If licensure or proper licensure is controverted, then proof of licensure pursuant to this section shall be made by production of a verified certificate of licensure from the Contractors State License Board which establishes that the individual or entity bringing the action was duly licensed in the proper classification of contractors at all times during the performance of any act or contract covered by the action. Nothing in this subdivision shall require any person or entity controverting licensure or proper licensure to produce a verified certificate. When licensure or proper licensure is controverted, the burden of proof to establish licensure or proper licensure shall be on the licensee."

Vascos suggests that it met its burden of demonstrating it had a valid license by producing a copy of its certificate and had no further burden to prove that it was properly licensed because defendant did not meet its burden of proving that the RME was a sham. We disagree. Indeed, the court in *Buzgheia* rejected the argument made by the contractor in that case that it "had no burden other than to produce the license certificate." (*Buzgheia, supra*, 60 Cal.App.4th at p. 389.) Instead, the court found that "production of the certificate is necessary, but insufficient if the point is controverted." (*Ibid*.)

A party sued by a corporate contractor may also challenge the contractor's license on the ground that the RME is a "sham." (*Buzgheia, supra*, 60 Cal.App.4th at p. 385.) "If the RME was a

sham, the contractor is barred from recovery because [it] is, in effect, acting outside the license, just like a specialty contractor who labors at a task for which he or she has no expertise nor license." (*Id.* at p. 386.) The contractor has the burden of proof on the issue of whether it has a bona fide RME. (*Id.* at p. 389; *Jeff Tracy, Inc. v. City of Pico Rivera* (2015) 240 Cal.App.4th 510, 516–518 (*Jeff Tracy, Inc.*).)

In *Jeff Tracy, Inc.*, the defendant argued the plaintiff contractor could not recover compensation because it had a sham RME. The trial court denied the contractor's request for a jury trial on the issue pursuant to Code of Civil Procedure section 597, which permits non-jury trials on special defenses. The Court of Appeal reversed, holding that the contractor's licensure— including its satisfaction of the RME requirements—is an element of its breach of contract claim. (*Jeff Tracy, Inc.*, *supra*, 240 Cal.App.4th at p. 518.)

A plaintiff, of course, has the burden of proof with respect to each element of its causes of action. (Evid. Code, § 500.)

In *Buzgheia*, the defendants argued the plaintiff contractor could not prevail because his company had a sham RME. The trial court instructed the jury the contractor's presentation of a certificate of licensure shifted the burden of proof on the issue of licensure to the defendants. (*Buzgheia*, *supra*, 60 Cal.App.4th at p. 383.) The Court of Appeal held this instruction was erroneous because the contractor's burden "included the burden of proving compliance with the RME requirements." (*Id.* at p. 393.)

Similarly, in the present case, Vascos' presentation of a certificate of licensure did not end the inquiry or shift the burden of proof. As the trial court correctly determined, Vascos had the burden of proof on the issue of whether its purported RME,

9

Welch, was bona fide. This is because Vascos' licensure through a bona fide RME is an element of its cause of action.

Vascos did not meet its burden. It presented no evidence showing Welch was a "permanent" employee of the company. Vascos also failed to present any evidence that Welch worked 32 hours per week, or 80 percent of the total hours per week that the company's business was in operation.

The only evidence in the record on this issue is a declaration by project manager Victor Montes.[3] Although Montes states that he attaches videos purporting to show Welch at Gold's property, the videos are not in the record. In any case, even assuming Welch was at the project site on two occasions as Vascos claims, this falls far short of showing Welch was a bona fide RME.

The trial court correctly noted that "Vascos could have easily submitted a declaration from Welch establishing that he was a bona fide RME." Vascos could have met its burden, the trial court stated, with a "five sentence declaration" from Welch. We agree with the trial court's observation. The burden on Vascos was not high, yet it failed to meet it.

Vascos argues it never had the burden on the issue of licensure because the issue was not "controverted" by Gold within the meaning of section 7031, subdivision (d). We disagree.

---

[3] The parties make different assertions about the evidence presented to the arbitrator regarding the RME issue. There was no court reporter at the arbitration hearing and very little of the evidence the arbitrator considered is in the record. From our perspective, "if it is not in the record, it did not happen." (*Protect Our Water v. County of Merced* (2003) 110 Cal.App.4th 362, 364.)

10

"[A] defendant's answer containing a general denial of the material allegations of the contractor's claim [citation] is sufficient to 'controvert' the contractor's allegation of licensure, and thus invokes the requirement of section 7031, subdivision (d) . . . ." (*Advantec Group, Inc. v. Edwin's Plumbing Co., Inc.* (2007) 153 Cal.App.4th 621, 624.) Here, though Gold did not file an answer in court, he did controvert Vascos' licensure at the arbitration.

The AAA Construction Arbitration Rules provide that the parties may proceed under "Regular Track" or "Fast Track" procedures.[4] Pursuant to stipulation of the parties, the arbitrator applied the Fast Track Procedures in this case.

Section F-2 of the Fast Track Procedures provides: "If an answer or counterclaim is to be filed, it shall be filed within seven calendar days after notice of the filing of the demand is sent by the AAA. All other requirements of Section R-4 apply."

Section R-4(c)(i) of the Regular Track Procedures, in turn, provides: "A respondent may file an answering statement with the AAA within 14 calendar days after notice of the filing of the demand is sent by the AAA. . . . If no answering statement is filed within the stated time, the respondent will be deemed to deny the claim."

In the present case, while Gold did not file an answering statement, he was "deemed" to deny Vascos' allegations, including its allegation that it was a duly licensed contractor. Gold also argued in his closing arbitration brief that Vascos was

---

[4]    The Fast Track Procedures are in the record. We take judicial notice of the remainder of the Construction Arbitration Rules. (Evid. Code, §§ 452, subd. (h), 459, subd. (a).)

11

not duly licensed because Welch was not a bona fide RME. After Gold made this argument, Vascos was given an opportunity to present evidence on the issue at the arbitration.

Vascos' contention that Gold did not controvert its licensure claim elevates form over substance. This argument also fails to account for the public policy underlying section 7031. The shield against the "evil targeted by section 7031" is undermined if the RME is sham. (*Buzgheia*, *supra*, 60 Cal.App.4th at p. 387.) "Because of the strength and clarity of this policy, it is well settled that section 7031 applies despite injustice to the unlicensed contractor." (*Hydrotech*, *supra*, 52 Cal.3d at p. 995.)

Moreover, there are sound public policy reasons for placing the burden on the contractor rather than the consumer under these circumstances. "The contractor will (or should) have knowledge of how he has utilized the RME. The contractor will (or should) have greater access to evidence, namely his own records, including payroll records, timesheets, the names of other employees who can testify to the activities of the RME and so forth. The 'most desirable result in terms of public policy in the absence of proof' that a contractor complied with the licensing laws, including the RME provisions thereof, is that the contractor who evades the law should be barred from court. [Citations]." (*Buzgheia*, *supra*, 60 Cal.App.4th at p. 390.)

Vascos argues that the trial court should have given "deference" to the arbitrator's findings and that "[t]he Arbitration Award created a presumption of proper licensure." As we have explained, however, this position has been repeatedly rejected by the courts. "A party seeking confirmation [of an arbitration award] cannot be permitted to rely upon the arbitrator's conclusion of legality for the reason that paramount

12

considerations of public policy require that this vital issue be committed to the court's determination whenever judicial aid is sought." (*Loving & Evans*, *supra*, 33 Cal.2d at p. 614; accord *Lindenstadt*, *supra*, 55 Cal.App.4th 892–893 [holding trial court's failure to review issue of illegality de novo was error]; *Sheppard Mullin*, *supra*, 6 Cal.5th at pp. 74–75 [affirming *Loving & Evans* rule].)

Vascos' reliance on *MW Erectors* is misplaced. There, the California Supreme Court held that "the CSLL does not automatically void all contracts entered by unlicensed contractors." (*MW Erectors*, *supra*, 36 Cal.4th at p. 440.) In particular, the court held, "if fully licensed at all times during contractual *performance*, a contractor is not barred from recovering compensation for the work solely because he or she was unlicensed when the contract was *executed*." (*Id.* at p. 419.)

*MW Erectors* did not involve judicial review of an arbitration award and stated nothing about the issue here, namely the burden of proof on the issue of a contractor's licensure. Further, the trial court's decision is consistent with *MW Erectors* because there is no evidence that Vascos was a duly licensed contractor at any time, including when it performed its obligations under the contract.

Vascos' citation to *Templo Calvario Spanish Assembly of God v. Gardner Construction Corp.* (2011) 198 Cal.App.4th 509 (*Templo Calvario*) is also unpersuasive. In *Templo Calvario*, an arbitrator ruled a consumer could disgorge fees it paid an unlicensed contractor. Citing *MW Erectors*, the court held the CSLL did not prohibit a consumer from arbitrating a dispute "simply because the contractor was unlicensed at the time of the

signing of the construction contract." (*Templo Calvario, supra,* 198 Cal.App.4th at p. 519.)

The present case is factually distinguishable from *Templo Calvario.* Instead of a consumer seeking disgorgement from an unlicensed contractor, an unlicensed contractor is attempting to recover from a consumer. The *Templo Calvario* court expressly recognized this distinction. It noted that the CSLL and *MW Erectors* barred a contractor from "initiating any affirmative arbitration claim" and "bringing suit or using the courts to collect compensation of its work while unlicensed." (*Templo Calvario, supra,* 198 Cal.App.4th at p. 519.)

Vascos unconvincingly cites dicta in *Tempo Calvario.* The *Templo Calvario* court stated that *MW Erectors* "effectively" overruled *Loving & Evans* "on the issue of whether a contract entered into by an unlicensed contractor is automatically ' "illegal and void." ' " (*Templo Calvario, supra,* 198 Cal.App.4th at p. 520.) Addressing this comment, the *Ahdout* court stated that "even if *Templo Calvario* correctly interprets the state of the law, the decision does not affect the outcome here." (*Ahdout, supra,* 213 Cal.App.4th at p. 39, fn. 8.)

The same is true in this case. Nothing in *MW Erectors* or *Templo Calvario* changes our analysis. Further, as explained *ante,* after *MW Erectors, Templo Calvario,* and *Ahdout* were decided, the California Supreme Court endorsed the continued validity of *Loving & Evans,* though it noted the decision has been limited in certain respects that do not change the outcome here. (See *Sheppard Mullin, supra,* 6 Cal.5th at pp. 75–79.)

The trial court applied the correct burden of proof and reached the right result. Vascos did not meet its burden of proving it was a duly licensed contractor through a bona fide

14

RME.  The arbitration award therefore must be vacated because the arbitrator exceeded her powers.

## II.   *Vascos' Request for an Evidentiary Hearing*

In his petition to vacate the arbitration award, Gold asked for an order permitting "very limited discovery to determine the existence of documents proving full-time employment of John Matthew Welch from June to November 2019, including:  (a) payroll records with cancelled checks; (b) worker's compensation employee reports; and (c) payroll tax returns."  (Italics omitted.)  Gold also requested the trial court to conduct an evidentiary hearing with live witness testimony on whether Welch was a bona fide RME.

In its opposition to Gold's petition, Vascos objected to permitting discovery and holding an evidentiary hearing.  Vascos argued that "Gold's request for what would effectively be a new court trial on the issue of licensure is legally unsupported and unsupportable."  According to Vascos, the trial court only had authority, at most, to conduct "a de novo review of the available evidence to the trial court at the time of review."  (Italics and bold omitted.)  Vascos asserted an evidentiary hearing would be an inappropriate "fishing expedition" that "is clearly not supported by law."[5]

Now, on appeal, Vascos argues that it "should have been given notice and an opportunity to present evidence of the bona

---

[5]    In support of his request for an evidentiary hearing, Gold cited *Ahdout*, *supra*, 213 Cal.App.4th at pp. 39–40 and *Lindenstadt*, *supra*, 55 Cal.App.4th at p. 893, fn. 8.  Vascos argued *Ahdout* and *Lindenstadt* did not support Gold's position. We do not reach this issue.

fides of its responsible managing employee prior to the trial court's ruling."  The trial court, Vascos contends, "erred by not setting an evidentiary hearing."

Gold argues Vascos "waived" a request for an evidentiary hearing and is judicially estopped from contending it was deprived of an evidentiary hearing.

A.    *Waiver/Forfeiture*

"It is axiomatic that a party may not complain on appeal of rulings to which it acquiesced in the lower court."  (*Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, 912 (*Porterville*).)  Although "waiver" and "forfeiture" are often used interchangeably to describe a party's failure to raise an issue in the trial court, the two terms should be differentiated.  (*In re Stier* (2007) 152 Cal.App.4th 63, 74.)  " ' " 'Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the "intentional relinquishment or abandonment of a known right." [Citations.]' [Citation.]" [Citation.]' " (*Ibid.*)  Forfeiture is "the correct legal term to describe the loss of the right to raise an issue on appeal due to the failure to pursue it in the trial court." (*Ibid.*; accord *Porterville,* at p. 912.)

Vascos forfeited on appeal any argument that the trial court should have conducted an evidentiary hearing because it did not ask for one in the trial court.  To the contrary, Vascos successfully opposed such a hearing.

B.    *Judicial Estoppel*

Because we conclude Vascos forfeited its argument that the trial court denied it an evidentiary hearing, we do not reach the

issue of whether Vascos is judicially estopped from making that argument.

## DISPOSITION

The July 28, 2021, order of the superior court is affirmed. Respondent Robert Gold is awarded his costs on appeal.

TAMZARIAN, J. [*]

We concur:

BAKER, Acting P.J.

KIM, J.

_____

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17

Filed 1/20/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| VASCOS EXCAVATION GROUP LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ROBERT GOLD,<br><br>    Defendant and Respondent. | B315205<br><br>(Los Angeles County Super. Ct. No. 20STCV01372)<br><br><br>ORDER |

THE COURT:

The opinion in the above-entitled matter filed on December 21, 2022, was not certified for publication in the Official Reports.

Non-parties Michael Tenenbaum and Micha Star Liberty have requested that our opinion in the above-entitled matter, filed December 21, 2022, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c).

The opinion is ordered published in the Official Reports.

BAKER, Acting P. J.        KIM, J.        TAMZARIAN, J.*

---

\*      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

2